In re Sammy George DAILY, Debtor.

The ESTATE OF Sammy G.
DAILY, Plaintiff,

v.

LILIPUNA ASSOCIATES, a Hawaii limited partnership; Lilipuna Venture, Inc., a Hawaii corporation; Lilipuna Development Corporation, a Hawaii corporation; and Title Guaranty Escrow Service, Inc., a Hawaii corporation, Defendants.

Bankruptcy No. 85–00061.
Civ. No. 89–00316 MP.
Adv. No. 89–0005.

United States District Court,
D. Hawaii.

Oct. 11, 1989.

Jerrold K. Guben, Honolulu, Hawaii, for plaintiff.

Roy L. Anderson, Honolulu, Hawaii, for Lilipuna Venture and Lilipuna Development Corp.

Thomas Yamachika, Stewart J. Martin, Honolulu, Hawaii, for Lilipuna Associates.

## ORDER AFFIRMING THE BANKRUPTCY COURT'S FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

PENCE, District Judge.

### INTRODUCTION

This is an appeal from the decision of the Bankruptcy Court in Adv. No. 89-0005; Bk. No. 85-00061. Sammy G. Daily filed his petition for reorganization on January 31, 1985 and on September 23, 1986, Edward J. Stanley was appointed the Trustee of the Estate of Sammy G. Daily. On November 22, 1988, Sammy G. Daily's Chapter 11 case was converted to a Chapter 7 case, and on or about January 6, 1989, Richard Kennedy was appointed the Chapter 7 Trustee of the Estate of Sammy G. Daily. On January 18, 1989, the Trustee in the bankruptcy filed an adversary complaint against Lilipuna Associates ("LA"), a Hawaii limited partnership, Lilipuna Ventures, Inc. ("LVI"), a Hawaii corporation, Lilipuna Development Corporation ("LDC"), a Hawaii corporation, and Title Guaranty Escrow Service, Inc., a Hawaii corporation, seeking a ruling from the Bankruptcy Court that proceeds of the sale of certain lands in which LVI and LDC held an ownership interest be turned over to the Trustee. The Trustee alleged that LVI and LDC were "alter egos" of Sammy Daily, the debtor, and that therefore, any monies, funds and proceeds which might be attributable to LVI and LDC were the property of the estate of Sammy Daily and as such, properly under the control of the Trustee.

As part of the proceedings, the Trustee filed a Motion in Limine. At the hearing on the Motion in Limine, the Trustee argued that based on the repeated failure of the Lilipuna "entities" and the debtor's son

Michael to produce subpoenaed corporate and business records of LVI and LDC, the Bankruptcy Court should grant the Trustee's Motion in Limine and prohibit introduction of any evidence or documents which contradicted the assertions made in the adversary complaint. In response to this motion, the Bankruptcy Court ruled that the defendants LVI, LDC and the debtor's son, Michael Daily, who was an officer in both of these corporations, were now precluded from introducing documents and materials which were the subject of subpoenas issued in 1987, 1988, and 1989, and which had been ignored repeatedly by Michael and the defendant corporations. The Court found that Michael, as custodian of the records of the Lilipuna "entities", had failed to produce the court-ordered documents for over 2 years, and that any attempt to introduce them at this point would be denied, and the allegations contained in the Trustee's complaint would be deemed established as facts for the purposes of the case. FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER RE: PERMANENT INJUNCTION, Dated January 31, 1988, pp. 14-16.

As part of its Conclusions of Law, the Bankruptcy Court held that LVI and LDC were 'alter egos' of Sammy G. Daily and any monies, funds and proceeds allocated to LVI and/or LDC [as their shares as a general and limited partner of Lilipuna Associates] from the sale of the Bayview Ridge property were to be paid over to the Trustee. FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER at p. 3, ¶ 7. Furthermore, the Court held that "Sammy G. Daily is not just a manager and a trustee of LVI, LDC and/or LHI, but the actual owner of said entities and that Sammy G. Daily, through his control of the family entities, is the beneficial owner of the interest of his family in LVI, LDC and LHI." FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER, p. 16, ¶ 13. The Court went on to invoke its equitable powers to "pierce the veil of the various Lilipuna-related entities and declare that LVI, LDC, and LHI are 'alter egos' of their true owner, Sammy G. Daily," FINDINGS OF FACT, CONCLUSIONS OF LAW AND

ORDER at p. 17, ¶ 16, and as a result order that Lilipuna Associates be directed to pay over all of the monies, funds and proceeds from the sale of the Bayview Ridge Estate which may be attributable to the general partners' [sic] interest of LVI and the limited partners' [sic] interest of LDC to the Trustee of the Estate of Sammy G. Daily." FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER at p. 18. It is from these conclusions and this order that the Appellants' present appeal is taken.

## I. FACTUAL BACKGROUND

On January 18, 1989, the Bankruptcy Court granted the FDIC's motion for authority to institute adversary proceedings on behalf of the Chapter 7 Trustee of the Est. of Sammy G. Daily (converted from Chapter 11 on November 22, 1988), against LDC, LVI, LA and Title Guaranty Escrow Service. The proceedings concerned disposition of a fund composed of proceeds of the sale of real property in which LDC and LVI had an interest and the disposition of that fund, which was being held in escrow by Title Guaranty. The fund in question resulted from a complex series of business transactions. Lilipuna Associates was formed as a Hawaii limited partnership, comprised of two general partners and about 12 limited partners. For approximately the past 6 years, Lilipuna Ventures, Inc. has been one of the two general partners (LVI was substituted for Sammy G. Daily about 7 months after the partnership was formed) and Lilipuna Development Corporation has been one of the limited partners, both with a percentage interest therein. LA has recently closed a sale of its property (Bayview Ridge, located in Kaneohe) for a price in excess of $1 million, and was scheduled to make disbursements to all of its partners, including dispursements to LVI and LDC in the amount of approximately $275,000. This fund is now segregated in an escrow account held by Title Guaranty, pending the completion of an audit.

Judge Chinen's Order details the interrelationship between the debtor, the debtor's son, Michael C. Daily, and LVI and LDC. It discusses the failure of Michael, as custodian of records of various companies in which both he and his father were officers/directors, to produce various business and family-related records pursuant to various subpoena duces tecum, and also discusses two hearings which were held on the FDIC's motion for contempt.

Judge Chinen's Order states that following those hearings the Bankruptcy Court found: (1) that Sammy and Michael Daily were involved as officers or directors of the very same corporate and partnership entities during the relevant period; (2) that Michael Daily permitted Sammy Daily to take certain documents (including the Lilipuna companies' books and records) to Kansas even though the documents were under subpeona and Michael did not make copies of them; (3) Michael Daily personally threw away/disposed of documents specifically requested under those subpoenas; (4) Michael Daily lied as to whether certain documents were stored at the "Menehune Closet"; and, (5) Michael Daily gave contradictory testimony regarding documents which he did not produce because he "lost" them.

With regard to Sammy Daily's control over the Lilipuna-related entities, the Bankruptcy Court found as follows: (1) when Michael Daily was asked about LDC at the November 21, 1988 contempt hearing, he admitted to being the president of LDC, but was not sure what the corporation did; (2) Michael testified at his April 14, 1988 deposition that he and his father "flipped a coin" to determine who was going to be president of LVI; (3) Michael testified with respect to LDC that he "never questioned anything that he [Sammy Daily] did; (4) that Michael C. Daily, a putative officer, director and shareholder of LVI, LDC, and LHI "did not know many of the most fundamental things concerning the operation and ownership of the Lilipuna entities;" and, (5) that none of the other shareholders or stockholders of the Lilipuna entities, including Margaret P. Daily (Sammy Daily's wife) and Terry Lynn Daily (Sammy Daily's daughter) ever appeared in court and did not intervene or participate in the proceedings which ostensibly affected their pur-

ported ownership interests in LVI, LDC and LHI. FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER at pp. 10–13, 16–17.

Pursuant to the Trustee's Motion in Limine to exclude certain evidence, documents and opinions which were not produced pursuant to the Bankruptcy Court's Order to Compel of May 27, 1987, and the Order Re Contempt of December 16, 1988, the Bankruptcy Court deemed "as established fact the assertions and allegations contained in the Trustee's Complaint for Declaratory and Equitable Relief." FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER, p. 16, ¶ 12 (citing cases).

The Bankruptcy Court found that:

As to the ownership of LVI, LDC and LHI, the Court, based on the record, submitted as part of the FDIC's Motion to Compel and the November 21, 1988 hearing, concludes that Sammy G. Daily is not just a manager and a trustee of LVI, LDC and/or LHI, but the actual owner of said entities and that Sammy G. Daily, through his control of family entities, is the beneficial owner of the interest of his family in LVI, LDC and LHI.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER at 16, ¶ 13.

The Bankruptcy Court further found that, "[it] is a Court of Equity and the court will pierce the veil of the various Lilipuna-related entities and declare that LVI, LDC, and LHI are 'alter egos' of their true owner, Sammy G. Daily," FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER at p. 17, ¶ 16, ruling that a corporate entity would be disregarded when the existence of a corporation is a mere facade of the debtor and it would be inequitable to recognize the existence of a separate and independent corporate entity.

The Bankruptcy Court, after directing that LA pay over to the Trustee all funds from the sale of the Kaneohe property attributable to the interests of LVI and LDC, ruled that "the Trustee shall hold the monies, funds and proceeds paid over by LA as part of the Debtor's estate and may be disbursed according to further orders of the Court." FINDINGS OF FACT, CON-

CLUSIONS OF LAW AND ORDER at p. 18.

## II. THE PRESENT APPEAL

The present appeal is brought by LVI and LDC. They appeal from Judge Chinen's Findings of Fact, Conclusions of Law and Order, claiming that the order is a denial of fundamental procedural due process, that the Bankruptcy Court misapplied the corporate "alter ego" concept, that reversible error was committed in eliminating claims of innocent corporate stockholders and creditors, and that the claim against the proceeds from the sale of the Kaneohe property is not property of Daily's estate and thus cannot be maintained by the Trustee.

For his part, the Trustee maintains that this Court needs to view conduct of the debtor in the light of the decisions of other courts concerning Mr. Daily's business dealings, that the Appellants are barred by res judicata and/or collateral estoppel from "relitigating" certain issues already determined by the Bankruptcy Court, and that the Dailys were appropriately sanctioned for their failure to provide discovery in the adversary proceeding, the eventual result of which was to have the Bankruptcy Court order the assets of LVI and LDC to be turned over to the Trustee, who claims an equitable right to these proceeds.

While the Appellants have outlined 15 different issues presented, upon a careful review of the parties' papers, this Court finds that there are basically four issues requiring resolution:

1) May the Trustee supplement the record before this Court with the decisions of other courts regarding allegedly relevant conduct of the debtor?

2) Is res judicata and/or collateral estoppel appropriate in this case, and if so, may it appropriately be invoked against the Appellants?

3) Does the Bankruptcy Court possess the power to impose the sanctions which it did, namely deeming facts alleged in one party's complaint as established with the result being a piercing of the corporate veil

with respect to the Appellants, and were those sanctions appropriate in this case?

4) May the Trustee properly assert a claim to the proceeds of the sale of the Kanehoe property?

## III. STANDARD OF REVIEW

■ This Court notes that it is required to give deference to the Bankruptcy Court's findings of fact, and reject them only if they are found to be "clearly erroneous." Bankruptcy Rule 8013, Fed.Bk.R, provides that:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witness.

The Trustee emphasizes in this regard the fact that Judge Chinen has had the opportunity to hear and observe Michael Daily's "live" testimony and judge his credibility, as well as reviewing the proposed findings of fact and conclusions of law from both parties in light of the Judge's familiarity with the case.

■ As to the Bankruptcy Court's conclusions of law, this Court reviews those conclusions de novo. *In re John E. Lockard d/b/a J.W.L. Construction,* 884 F.2d 1171, 1174 (9th Cir.1989); *In re American Mariner Industries, Inc.,* 734 F.2d 426, 429 (9th Cir.1984). This includes questions regarding the availability of collateral estoppel. *Lockard, supra; Robi v. Five Platters, Inc.,* 838 F.2d 318, 321 (9th Cir.1988); *cf., Eilrich v. Remas,* 839 F.2d 630, 632 (9th Cir.1988) (availability of collateral estoppel is a mixed question of law and fact which the Court of Appeals reviews de novo but, if collateral estoppel is available, decision to give preclusive effect is reviewed for abuse of discretion).

## IV. SUPPLEMENTS TO THE RECORD ON APPEAL

■ The Trustee has submitted an extended discussion of other actions and convictions against the debtor Sammy Daily and his son Michael. He asserts that the Judge Chinen's decision and order "can only be understood in the context of" these other proceedings. Understandably, the Appellants resist the introduction of these additional matters and their consideration by the Court, arguing that the Court is restricted to a review of the "papers and exhibits filed in the District Court, the transcript of proceedings, if any, and a certified copy of the docket entries." REPLY BRIEF OF APPELLANTS, pp. 5–6, citing Fed.R.App.P. 10(a), and Fed.Bankruptcy Rule 8006.

The Appellants' position is well-taken. The Ninth Circuit reviewed the appropriate composition of the record on appeal in *Kirshner v. Uniden Corp. of America,* 842 F.2d 1074 (9th Cir.1988), citing Fed.R. App.P. 10(a) and the Ninth Circuit's own Rule 10–2 which provides that: "[p]ursuant to FRAP 10(a), the complete record on appeal consists of: ... (b) the district [here bankruptcy] court clerk's record of original pleadings, exhibits and other papers filled with the district court ('clerk's record')".

Judge Alarcon went on to elaborate in language which is applicable to the instant case:

> Papers not filed with the district court or admitted into evidence by that court are not part of the clerk's record and cannot be part of the record on appeal. *See United States v. Walker,* 601 F.2d 1051, 1054–55 (9th Cir.1979) (affidavits that "were not part of the evidence presented to the district court" would not be considered on appeal); *Panaview Door & Window Co. v. Reynolds Metals Co.,* 255 F.2d 920, 922 (9th Cir.1958) (striking from record an exhibit that had been attached to appellant's trial court memorandum of points and authorities and a document that had been marked for identification, neither of which had been received into evidence).

*Kirshner v. Uniden Corp. of America,* 842 F.2d 1074, 1077 (9th Cir.1988). The Circuit Court went on to hold that "[p]apers submitted to the district court *after* the ruling that is challenged on appeal should be stricken from the record on appeal." *Id.* (citations omitted) (emphasis in original).

Under such a clear mandate of authority from the Ninth Circuit, this Court is bound to strike from the record which it considers on appeal any material in addition to that which was before the Bankruptcy Court when it issued its findings and order. Were this an ordinary hearing before this Court, the material submitted by the Trustee might be relevant. However, in the consideration of an appeal from the decision of a lower court, this Court is bound to reject any attempt to supplement the record in this way and will strike any material which was not before the Bankruptcy Court from the record on appeal.

## V. THE USE OF RES JUDICATA AND/OR COLLATERAL ESTOPPEL AGAINST NON–PARTIES

The Appellants argue that the order entered by the Bankruptcy Court is inapplicable them because it was "(1) against others, (2) in separate proceedings, (3) involving different issues, (4) between different parties, (5) before the Complaint against them existed, and (6) over which the Appellants had no control." OPENING BRIEF OF APPELLANTS, p. 21. Appellants point to law in this district where the court required that in order to apply collateral estoppel, the issues involved must have actually have been litigated, and that the precise question as to which the estoppel is asserted must have been raised. *Pistoll v. Lynch,* 96 F.R.D. 22, 29 (D.Hawaii 1982). Furthermore, they maintain that unless the issue decided was the same as that in the instant case, there was a final judgment in the matter, and the parties are the same, or in privity with those sought to be bound, that collateral estoppel will not be available.

For his part, the Trustee maintains that the "core proceeding" and the adversary proceeding involve parallel issues, namely issues of control and corporate dominance,

and that Judge Chinen's findings of fact are "final" and subject to review of this Court. He does not deal with the difference between the parties.

■ The use of collateral estoppel is limited by the due process requirements of the Constitution. The general rule was stated by the United States Supreme Court in *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971):

> Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stands squarely against their position.

402 U.S. at 329, 91 S.Ct. at 1443.

The Supreme Court has qualified this rule by stating that "privies" may be bound by a prior litigation of an issue, *Allen v. McCurry,* 449 U.S. 90, 97–98, 101 S.Ct. 411, 416–417, 66 L.Ed.2d 308 (1980), along with those who "control" a prior litigation. *Montana v. United States,* 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979).

The Supreme Court has never provided precise definitions of "privies" or what would constitute sufficient control. Thus a determination of when due process might or might not permit collateral estoppel must focus on the factual context of the present appeal, history, decided cases, and stated or implicit reasons why those cases did or did not permit the application of collateral estoppel to nonparties.

■ A claim of due process protection may be lost through estoppel. This may occur in two different contexts. The first is where the nonparty substantially participated in the control of the presentation of the prior action. *Montana v. United States,* 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979) (where United States required suit to be filed, reviewed and ap-

proved the complaint, paid the attorney's fees and costs, and directed an appeal, it would be found to be estopped from relitigating, even though not a party to the original action). The second is where conduct by the nonparties promotes reliance by others that the party opposing them is the proper party to the suit. These circumstances often arise when a person having property or contract rights, or other legally protectable interests, invests another with apparent ownership, thereby creating the appearance that the recipient is the party that others should approach concerning the interest. Restatement (Second) of Judgements § 41 (1982).

There is one other method of precluding nonparties from relitigating issues which has been employed in earlier cases. That is the concept of "virtual representation". The seminal case using this approach is *Aerojet–General Corp. v. Askew*, 511 F.2d 710 (5th Cir.), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). In that case, Aerojet had an option to buy land that it had leased from the Florida state government. When the state passed a law prohibiting the sale of the land to private parties, Aerojet successfully sued to obtain specific performance of the option contract. Dade County, where the land was located, then sued to buy the land as provided by the statute. Both the district court and the Fifth Circuit held that under federal law "a person may be bound by judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative." 511 F.2d at 719 (citing cases).

Other courts have followed the *Aerojet* approach, including the Ninth Circuit. *See, e.g., Los Angeles Branch NAACP v. L.A. Unified School District*, 750 F.2d 731, 741 (9th Cir.1984) (nonparties could be collaterally estopped in school desegregation case where parties to a prior action had provided "actual and efficient protection"); *Johnson v. United States*, 576 F.2d 606, 611 (5th Cir.1978) (United States was precluded from relitigating issues which had been litigated in a prior action decided in favor of present party's sister-in-law, even though not a party to the prior litigation);

*Proctor & Gamble Co. v. Byers Transp. Co.*, 355 F.Supp. 547 (W.D.Mo.1973) (truckers challenging government regulations were bound by findings in a similar suit by approximately sixty other carriers represented by the same counsel); *Environmental Defense Fund v. Alexander*, 501 F.Supp. 742 (N.D.Miss.1980) (earlier challenge by environmental groups to a navigation project bound nonparty challengers 'having the same interest.'). And at least one court has held that a party who could intervene but fails to try to do so should be bound. *See Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 459 F.Supp. 507, 514–516 (S.D.Fla. 1978) (citing *Aerojet–Gen. Corp. v. Askew*) (when party was aware of suit and that its rights were jeopardized, but failed to intervene, it would be bound by the judgment).

■ The Appellants were not parties in the adversary proceeding below; therefore, res judicata is unavailable against them.

■ It is also true that a traditional application of collateral estoppel would require that at least the party against whom it is being applied be one who had litigated the issue in a prior proceeding which had resulted in a final judgment. Neither LVI or LDC litigated any issue in the adversary proceeding below, and the application of collateral estoppel against them thus would not be ordinary practice.

■ This is not to say, however, that it would be one without precedent. Even under the Appellants' own authority, in situations where there exists a final order which relates to the same issue as is sought to be relitigated by parties or their privies, collateral estoppel may be applied. *Pistoll v. Lynch*, 96 F.R.D. 22 (D.C.Haw.1982). Appellants admit that Judge Chinen's Order and Findings of Fact constitute "a final judgment against Appellants." OPENING BRIEF OF APPELLANTS, p. 21, ¶ 2. The question that this Court must resolve is whether the issues in that case are sufficiently similar to those raised in this appeal, and whether the Appellants are parties whose interests are so allied with those of the debtor and Michael C. Daily that the

use of collateral estoppel against them is appropriate.

As to the identity of the issues, the matters that the Appellants raise in their appeal concern whether or not there existed sufficient control and/or ownership of LVI and LDC by Sammy Daily as would provide justification for Judge Chinen's order. These are issues which were dealt with by the order, although not litigated issues. The Court notes that it was as a sanction for failure to comply with his discovery orders that Judge Chinen deemed facts alleged in the initial adversary complaint to be admitted as true and that his ruling was based on those 'admissions'. But the Trustee argues that these issues were dealt with extensively in both depositions and hearing testimony which was before the Bankruptcy Court. This Court therefore concludes that Judge Chinen had the information before him that he would have gotten even had LVI and LDC been parties to the adversary proceeding. (The Court notes that Michael Daily, though President of both LDC and LVI, was not sure what business the corporation conducted. It is doubtful that significantly more information would have been elicited by having LDC of LVI as parties.)

■ Even under the more traditional applications of collateral estoppel, privies to the parties who litigated a prior issue may be properly bound by the judgment. Given the interconnected nature of the family holdings of the Daily family in the various Lilipuna enterprises, it is certainly plausible to view LVI and LDC as in privity with the debtor and with Michael C. Daily.

■ Secondly, estoppel is appropriate in cases where the prior litigants either controlled, or were controlled by the subsequent parties. See Montana v. United States, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Certainly control existed here. Michael Daily was the President of both LVI and LDC. He was also custodian of the records which were the subject of the discovery abuses ultimately resulting in Judge Chinen's Order. As to Sammy Daily, the debtor, it is evident from the record that he 'controlled' all of the Lilipuna enterprises from start to finish.

Additionally, this Court concludes that this is an appropriate situation for the application of the doctrine of "virtual representation" and the consequent application of collateral estoppel against nonparties. Here the interests of the Dailys are viewed as so "closely alligned with [LVI and LDC's] interests as to be [their] virtual representative." Aerojet–Gen. Corp. v. Askew, 511 F.2d 710, 719 (5th Cir.), cert. denied, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975); see also, Los Angeles Branch NAACP v. L.A. Unified School District, 750 F.2d 731, 741 (9th Cir.1984); Johnson v. United States, 576 F.2d 606, 611 (5th Cir.1978); Proctor & Gamble Co. v. Byers Transp. Co., 355 F.Supp. 547 (W.D.Mo.1973); Environmental Defense Fund v. Alexander, 501 F.Supp. 742 (N.D. Miss.1980).

Finally, the Court notes that LVI and LDC failed to intervene in the adversary proceeding below. The documents which were requested under the subpoena duces tecum dealt with LVI and LDC, and they should have had adequate notice that their interests were potentially affected by the prior action. Furthermore, the subpoena were served on their officers and controlling shareholders. Yet they took no action to protect their interests and failed to intervene in the adversary proceeding. Such a failure has been viewed as enough to bind a person not a party. See, e.g., Treasure Salvors, Inc. v. Unidientified Wrecked, Etc., 459 F.Supp. 507, 514–517 (S.D.Fla. 1978). This same reasoning applies to the Appellants' claims that their shareholders and creditors are prejudiced by Judge Chinen's order. The doctrine of virtual representation and the failure of those parties to intervene both allow them to be viewed as collaterally estopped in the same way as the Appellants.

For all of the above reasons, this Court rejects the Appellants' due process arguments and will view them as collaterally estopped from asserting positions inconsistent with those of the Dailys' in the adver-

sary proceeding and bound by the Order of the Bankruptcy Court below.

## VI. THE SANCTIONS IMPOSED BY THE BANKRUPTCY COURT

The Appellants claim that the Bankruptcy Court's entry of the finding that Sammy G. Daily "controls" the corporations, and declaring that LVI and LDC "are 'alter egos' of Sammy Daily, who actually owns and controls all of the Lilipuna entities," FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER, p. 17, ¶ 18, to be erroneous. Furthermore, they claim that the Bankruptcy Court's piercing of the corporate veil, even under its equitable powers, is an improper use of the alter-ego concept, a mistaken use of the notion of "control" under corporate law, and a disregard of the actual ownership of the corporation. Finally, they claim that the Bankruptcy Court's order makes short shrift of the claims of innocent shareholders and corporate creditors of LVI and LDC.

Basically it appears that what the Appellants are claiming is that the Bankruptcy Court lacked proper justification to pierce the corporate veil, and that the imposition of this measure as a discovery sanction is an abuse of discretion on the part of the Judge Chinen. This result ensued when, as a result of the failure of Michael C. Daily to abide by the Order to Compel issued by Judge Chinen, the Bankruptcy Court deemed as established the allegations of the Trustee's Complaint and then went on to find as a matter of law that Sammy G. Daily was not just a manager and trustee of LVI or LDC, but was the beneficial owner of the interests of his family in LVI, LDC and LHI. FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER, pp. 13–16.

For his part, the Trustee argues that a Bankruptcy Court has the equitable power to pierce the corporate veil and attribute property to the estate of a debtor when it ostensibly belonged to a non-debtor. Furthermore, he argues that ample authority exists to view Sammy G. Daily as both in "control" and the "owner" of the Lilipuna entities, justifying the finding of the Bank-

ruptcy Court that Mr. Daily was in fact in control and the actual owner of LVI and LDC. This finding is a necessary precursor to the view that the Trustee has an equitable claim to the assets of LVI and LDC, thereby making the Bankruptcy Court's order requiring the disgorging of the proceeds of the property sale appropriate.

The Court will deal with this issue in two parts; the first is the question of whether or not the Bankruptcy Court's action in deeming certain facts as "established" was an appropriate sanction for the failure to abide by its orders concerning discovery; the second is whether or not the Bankruptcy Court was justified in viewing Sammy G. Daily as the beneficial owner of the Lilipuna entities and whether or not it was appropriate for Judge Chinen to pierce the corporate veil and order the assets of LVI and LDC to be attributed to Daily.

A. *Sanctions under Rule 7037 of the Bankruptcy Rules—Establishment of Facts and Denial of Opportunity to Produce Evidence*

Judge Chinen deemed as established the facts, assertions and allegations contained in the Trustee's Complaint for Declaratory and Equitable Relief. FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER, p. 16, ¶ 12. Furthermore, he held that as a matter of law, he could deny a party the opportunity to rebut such a finding through the introduction of evidence and documents which the party was obligated to produce under discovery orders and a subpoena duces tecum, but which it had not yet produced. FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER, p. 14, ¶¶ 4–9.

The Appellants do not raise any significant issue with respect to this part of the order. It is apparent that Fed.Bk.R. 7037(b)(2) authorizes such action, and the Bankruptcy Court's action is well-supported by law. *See U.S. For Use of Wiltec Guam, Inc. v. Kahaluu Construction Co., Inc.,* 857 F.2d 600, 602 (9th Cir.1988); *Nilsson, Robbin, et al. v. Louisiana Hydrolec,* 854 F.2d 1538, 1546 (9th Cir.1988). Such action is reviewed for an abuse of discre-

tion "and absent a definite and firm conviction that the ... court made a clear error of judgment, [the reviewing court should] not reverse." *Louisiana Hydrolec, supra,* 854 F.2d at 1546.

Judge Chinen's findings are substantiated by the record and his actions are well-supported by the law. This Court therefore affirms the Bankruptcy Court's action in deeming the facts established and not allowing contradictory evidence.

B. *Viewing Sammy G. Daily as the Beneficial Owner of the Lilipuna Entities*

Part of the Conclusions of Law which Judge Chinen entered was that:

Sammy G. Daily is not just a manager and a trustee of LVI, LDC and/or LHI, but the actual owner of said entities and that Sammy G. Daily, through his control of the family entities, is the beneficial owner of the interests of his family in LVI, LDC and LHI.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER, p. 16, ¶ 13.

This is the part of this issue which Appellants argue most vigorously, asserting that Judge Chinen's findings are a misapplication of the corporate "alter ego" doctrine and corporate "ownership" as a matter of law. The Appellants further contend that LVI and LDC are free to allow anyone or anything to manage or control them, without actually causing that person to become the "owner" or having the corporations be the manager's alter ego. Furthermore, Appellants argue that the effect of Judge Chinen's order is not only to remove the corporate veil from LVI and LDC but also to take corporate property from the corporations' shareholders and creditors and to subject those assets to the debtor's unrelated personal liabilities.

The Trustee's response is that while there are shareholders other than the debtor in LVI and LDC, stock certificates are only prima facie evidence of the actual ownership of the corporate entity and that the Bankruptcy Court has the authority to grant to the Trustee any of the debtor's "equitable interests". He also points to the record, specifically deposition answers of Michael C. Daily, which show that it was Sammy Daily who actually ran LVI and LDC notwithstanding Michael's position as an officer and majority shareholder in the two entities.

■ It is clear that a Bankruptcy Court can pierce the corporate veil and attribute assets or liabilities to the shareholders of a corporation, and that equity will allow it to do so in order to achieve a just result. What is less clear is that if in doing so it can attribute assets of the corporation to one who is not a shareholder of the corporation concerned.

■ Disregarding the corporate entity is an action of a court which is taken under its equitable powers. "[A] bankruptcy court is a court of equity, charged to apply equitable principles to reach equitable results in administering the Bankruptcy Act. In doing so, the bankruptcy 'chancellor' may disregard form for substance and alter the result which would obtain under a formal application of general legal principles, in order to do equity." *In re Ahlswede,* 516 F.2d 784, 787 (9th Cir.1975) (citing *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939)).

■ While the decision to disregard the corporate entity is one to be made only under exceptional circumstances, "equity will not hesitate to disregard the corporate fiction when justice requires such a result." *In re County Green Ltd. Partnership,* 604 F.2d 289, 292 (4th Cir.1979). And as to the review of the decision to pierce the corporate veil, or view a corporation as an alter-ego of those in control of it, that decision "depends largely on the resolution of questions of fact. Therefore, the decision of the bankruptcy court should not [be] reversed unless it was clearly erroneous." *Id.; United States v. Jon–T Chemicals, Inc.,* 768 F.2d 686, 694 (5th Cir.1985) ("Resolution of the alter ego issue is heavily fact-specific and, as such, is peculiarly within the province of the trial court. Consequently, in reviewing the district court's finding, we apply the clearly erroneous standard of review) (citing cases)).

It is also clear that an application of the corporate law of this state would allow for piercing of the corporate veil to achieve equitable results if the factual situation demanded it. *Hilo Crane Service, Inc. v. Ho,* 5 Haw.App. 360, 693 P.2d 412, 421 (1984) (the doctrine of corporate entity may be disregarded when to observe it would work a fraud or injustice); *Chung v. Animal Clinic, Inc.,* 63 Haw. 642, 636 P.2d 721, 723 (1981) (corporate veil will be pierced and the legal entity of the corporation will be disregarded when there is evidence that the corporate fiction has been used to perpetrate a fraud or defeat a rightful claim) (citing cases)).

Also, federal courts have been willing disregard a corporation's existence if in doing so they would alleviate an inequitable result. *Cunningham v. Rendezvous, Inc.,* 699 F.2d 676, 680 (4th Cir.1983). And to pierce the corporate veil, fraud or other wrongful purposes need not be proven. *S.E.C. v. Elmas Trading Corp,* 620 F.Supp. 231 (D.C.Nev.1985); *Schattner v. Girard, Inc.,* 668 F.2d 1366, 1370 (D.C.Cir. 1982).

Even more telling with respect to the instant case are those cases where a bankruptcy court has attributed property to nonowners in order to prevent injustice. *See, e.g., In re Charnock,* 97 B.R. 619, 18 B.C.D. 1365 (M.D.Fla.1989) (when debtor transferred shares in his development company to his spouse and 2 associates who took no part in its actual operation, but retained control over the business and assets, the bankruptcy court disregarded corporate form and viewed the property as part of the debtor's estate notwithstanding the fact that the debtor was not the owner of the shares or assets); *In re Landbank Equity Corp.,* 83 B.R. 362 (E.D.Va.1987) (bankruptcy court could reach behind the corporate veil and recover from relatives and entities related to the debtor funds the trustee believed went to them illegally where corporations were owned and operated by members of one family and were used to perpetrate and conceal fraudulent business operations of the family, including those who had no ownership interest); *In re Tureaud,* 45 B.R. 658 (N.D.Okl.1985) (bankruptcy court disregarded the purportedly seperate existence of nondebtor corporate entities and consolidated those entities with the debtor's estate where the debtor organized those entities and maintained control over them in a manner which prejudiced creditors).

There are many factors which a court may consider in determining whether or not it is appropriate to pierce the corporate veil; the conclusion to disregard the corporate entity does not, however, rest on a single factor, but often involves a consideration of some of those listed such that the particular situation must generally present an element of injustice or fundamental unfairness. *S.E.C. v. Elmas Trading Corp.,* 620 F.Supp. 231, 233–234 (D.Nev.1985). The multitude of these factors and their interplay explains why the decision to pierce is one peculiarly within the province of the court which has tried the facts of the case, and which is in the best position to weigh the factors and the veracity of the parties who have provided the evidence.

Appellants point to *Riddle v. Leuschner,* 51 Cal.2d 574, 335 P.2d 107 (1959) as prohibiting attribution of corporate liabilities or assets to one not a shareholder of a corporation. In *Riddle* a closely-held corporation had been organized by a family. While the court disregarded the corporate entity, it refused to attribute liability to persons who, though they exercised control as managers, did not hold shares in the corporation. The Court has also examined *Firstmark Capital Corp. v. Hempel Financial Corp.,* 859 F.2d 92, 94 (9th Cir. 1988). Citing the *Riddle* case, the Ninth Circuit held in *Firstmark* that "[o]wnership of an interest in the corporation is an essential part of the element of unity of ownership and interest." 859 F.2d at 94. A unity of ownership and interest is one of the requirements of the law in California necessary to establish alter ego liability. (The *Firstmark* case required the Circuit Court to construe California law.)

As to this issue, there is little doubt that the Bankruptcy Court had the power to pierce the corporate veil and to impose

alter-ego liability on the shareholders of LVI and LDC. It is equally clear that one of the factors which the court is to consider is whether or not those in control of the corporation disregarded corporate formalities, abused that control, or treated the corporate interest as their own in such a manner as to impose liability on them. The record certainly would support Judge Chinen's view that Sammy Daily controlled LVI and LDC sufficiently so as to warrant the imposition of liability.

■ Secondly, the Court recognizes that the determination to pierce the corporate veil is one which is peculiarly within the province of the trier of fact and not to be reversed absent clear error. *In re County Green Ltd. Partnership, supra; United States v. Jon–T Chemicals, Inc., supra.*

The problem lies in the fact that Sammy Daily was not a shareholder of LVI or LDC. Notwithstanding this fact, the Court finds Judge Chinen's decision and order justified by both the record and the law.

While *Riddle* and *Firstmark* appear to be contra to this Court's conclusion, the *Riddle* case concerns the California Supreme Court's construction of California law, and thus is not binding upon any court except one construing the law of that state. As for the *Firstmark* case, the case itself (again construing California law) concerned the question of whether or not a passive spouse would bear incidental liability through her community property interest in a corporation which her husband had so abused as to result in the imposition of alter-ego liability. While the decision by the Ninth Circuit would prevent such an imposition on a passive spouse, the actions of Sammy Daily reflected in the record hardly allow for his characterization as a passive beneficiary of the acts of others.

In turning to the instant case, there are two methods of possible assessment for Judge Chinen's action. The first relies on the power of the Bankruptcy Court, considered supra, to take facts alleged in one party's papers as true as a sanction for failure to abide by the discovery rules. It is clear that Michael Daily's conduct rela-tive to the discovery orders in this case warrants the sanctions imposed by the court below. Those sanctions allowed the facts alleged in the plaintiff's complaint to be taken as true. One of those facts was that Sammy Daily was the beneficial owner of LVI and LDC, and that they were nothing more than Daily's alter ego. If the Bankruptcy Court takes those facts as true then that ends the matter.

■ The second line of analysis is based on the equitable power of the Bankruptcy Court to not allow the corporate fiction to result in fraud or injustice. This analysis relies on the fact that in situations where a bankruptcy court sees a corporate entity being used by a debtor to prevent creditors of that debtor from reaching his assets, the inherent equitable power of the court allows it to disregard the corporate form so that the substance of the matter is accurately reflected. Here, the debtor Daily was clearly in control of LVI and LDC. He had organized them as means of carrying on his businesses, and while at the time of the bankruptcy was not an actual officer or shareholder, he was most certainly the moving and controlling force behind all of their actions. *In re Matter of S.I. Acquisition, Inc.,* 817 F.2d 1142, 1152 (5th Cir. 1987), cited by the Bankruptcy Court, states that "when there is such an identity or unity between a corporation and an individual ... that all separateness between the parties has ceased and a failure to disregard the corporate form would be unfair or unjust" then piercing is appropriate.

Finally, it is apparent from the bankruptcy cases cited earlier that Judge Chinen's action in going behind the corporate facade and attributing property to a debtor is an appropriate exercise of equitable power. This is true even where the debtor does not hold actual 'title' to that property, particularly when the record supports a finding of abuse of the corporate entity and control of that entity by the debtor. *See, e.g., In re Charnock,* 97 B.R. 619, 18 B.C.D. 1365 (M.D.Fla.1989); *In re Landbank Equity Corp.,* 83 B.R. 362 (E.D.Va.1987); *In re Tureaud,* 45 B.R. 658 (N.D.Okl.1985).

Since the record supports the finding that there existed an identity between the

debtor and LVI and LDC and also Judge Chinen's position that it would be inequitable and unjust to allow Daily to hide behind the corporate facade as a means of escaping the claims of his creditors, and since the law is clear that Judge Chinen had equitable power to prevent such an abuse of the corporate fiction, the Bankruptcy Court's Findings of Fact, Conclusions of Law and Order as to this point are Affirmed.

## VII. THE TRUSTEE'S CLAIM TO THE PROCEEDS OF THE SALE

The Appellants maintain that since no claim to the proceeds of the sale of the Bayview Ridge property could be asserted by Sammy Daily, the Trustee has no claim which can be asserted on the debtor's behalf to the proceeds of that sale. They point to 11 U.S.C. § 541, specifically § 541(b)(1) which provides that property of the estate does not include "any power that the debtor may exercise solely for the benefit of an entity other than the debtor." Appellants maintain that any control that the debtor exercised over LVI or LDC was solely for their (the corporations') benefit, and not for the benefit of the debtor and as such any interest he may have had in the corporations by means of his control does not constitute an asset of the estate under § 541.

Furthermore, Appellants cite cases which support their position that unless the debtor could himself assert an ownership interest the Trustee is barred from such an assertion since the Trustee's rights and claims are limited to those which could be made by the debtor.

The Trustee maintains that notwithstanding the debtor's lack of 'ownership' interest in LVI and LDC that there exists ample authority for a bankruptcy court to attribute to the debtor property in which the debtor had an 'equitable' interest, regardless of whether the debtor actually had any right of ownership in such property. The Trustee also points out that 11 U.S.C. § 541(a)(1) provides that all "legal and equitable interests" of the debtor are part of the debtor's estate and as such subject to the claims of the Trustee.

This Court will review Judge Chinen's conclusions of law de novo. The Court finds that there exists ample authority for the proposition that a bankruptcy court may attribute assets or stock to a debtor as part of his estate when transfers or the use of the corporate facade have been employed as a means of prejudicing creditors or perpetrating injustice. *See, e.g., In re Charnock,* 97 B.R. 619, 18 B.C.D. 1365 (M.D.Fla.1989); *In re Landbank Equity Corp.,* 83 B.R. 362 (E.D.Va. 1987); *In re Tureaud,* 45 B.R. 658 (N.D. Okl.1985); *In re 1438 Meridian Place, N.W. Inc.,* 15 B.R. 89 (D.D.C.1981).

In addition to this authority, the Court is satisfied that there is ample support in the record for Judge Chinen's conclusion that the debtor controlled LVI and LDC and should be viewed as the beneficial owner of those entities. As a result, the Trustee possesses grounds to assert the claims on the proceeds from the sale of the Bayview Ridge property as specified in Judge Chinen's order.

Accordingly, the Findings of Fact, Conclusions of Law and Order of the Bankruptcy Court are AFFIRMED.

IT IS SO ORDERED.