**In re AMERICAN HOMEPATIENT, INC., et al., Debtors.**

**No. 302–08915.**

United States Bankruptcy Court,
M.D. Tennessee,
Nashville Division.

Nov. 5, 2003.

Frank J. Wright, C. Ashley Ellis, Hance, Scarborough, Wright, Ginsberg & Brusilow, LLP, Dallas, TX, Robert J. Mendes, Robert J. Gonzales, Mendes & Gonzales, PLLC, Nashville, TN, for the Debtors.

Robin E. Phelan, Lenard M. Parkins, Henry Flores, Haynes & Boone, Dallas, TX, James R. Kelley, Neal & Harwell, Nashville, TN, for the Bank of Montreal, Administrative Agent for the Secured Lenders.

David E. Lemke, Waller, Lansden, Dortch & Davis, Nashville, TN, for the Unsecured Creditors Committee.

Thomas Harvel Forrester, Gullett, Sanford, Robinson & Martin, Nashville, TN, for Invacare Corporation.

Steven Allen Riley, Gregory S. Reynolds, Bowen, Riley, Warnock & Jacobson, PLC, Nashville, TN, George N. Panagakis, Patrick Nash, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for the Equity Committee.

Charles M. Walker, Office of the U.S. Trustee, Nancy B. King, United States Bankruptcy Court, Middle District of Tennessee, Nashville, TN, for the United States Trustee.

### MEMORANDUM

GEORGE C. PAINE, II, Chief Judge.

### INTRODUCTION

This matter is before the court on the joint motion of the United States Trustee (hereinafter "UST") and American HomePatient, Inc. (hereinafter "debtor") to determine the amount of quarterly fees owed to the United States Trustee pursuant to 28 U.S.C. § 1930. For the reasons hereinafter cited, the court finds that the UST is entitled to collect quarterly fees for all disbursements of AHP–Delaware, the substantively consolidated debtor, from the petition date forward, and that all funds held in escrow pending resolution of this issue be released to the debtor for distribution according the confirmed plan in this case.

### FACTUAL BACKGROUND

The facts surrounding the quarterly fee issue are not in dispute. American HomePatient, Inc. ("AHP–Delaware") and twenty-four wholly owned subsidiaries filed voluntary petitions for relief under Chapter 11 on July 31, 2002. Also on the petition date, an order was entered permitting the joint administration of the debtor-entities. The UST conducted one debtor's conference and one meeting of creditors for the jointly administered debtors.

At the time of filing, the debtor operated under a centralized cash management system comprised of approximately 150 bank accounts. Each of the 33 regional billing centers maintains one or more depository accounts with a bank into which payments of the AHP–Delaware's accounts receivable are deposited. All funds in the deposit accounts are transferred by check or wire transfer to concentration accounts maintained by AHP–Delaware. The primary cash concentration account is maintained at PNC Bank National Association. All disbursements from the PNC account are made by AHP–Delaware from the corporate headquarters in Brentwood, Tennessee. Pursuant to the Order Authorizing the Maintenance and Use of Existing Bank Accounts, Cash Management System, and Business Forms and Waiving Certain Investment and Deposit Requirements entered on August 1, 2002, the debtor maintained their centralized cash management system upon commencement of the cases.

The debtor confirmed their Second Joint Amended Plan on May 27, 2003 which provided for the substantive consolidation of all of the debtors into AHP–Delaware. This court's Memorandum Decision discussed at length the need for substantive consolidation in these cases. *See In re American HomePatient, Inc.*, 298 B.R. 152 (Bankr.M.D.Tenn.2003). As part of the resolution to the UST's objection to confirmation, the parties entered into an agreed order that provided for the escrow of $170,000.00 pending resolution of the amount of quarterly fees owed. When the parties were unable to resolve their differences, they asked this court to decide what amounts, if any, were to be paid to the UST from the escrow account for quarterly fees.

The debtor has paid all quarterly fees for disbursements from AHP–Delaware.

Arguing that all disbursements have occurred through AHP–Delaware and not the wholly owned subsidiaries, the debtor has paid only the $250 statutory minimum during every quarter for the subsidiaries. The UST argues that the quarterly fees should be calculated based on the information provided in the Monthly Operating Reports based upon subsidiary-level revenue and expenses. The debtor contends that because AHP–Delaware makes all disbursements for itself and all the subsidiaries, only AHP–Delaware is responsible for making quarterly fee payments above the statutory minimum.

The issue for the court is the amount, if any, owing to the UST for quarterly fees in these consolidated cases. The court finds that the substantive consolidation of these cases was effective as of the petition date, and therefore quarterly fees were owing from only AHP–Delaware as of the petition date. Even if the court is erroneous on that finding, the court finds that the motion to determine quarterly fees is in essence a motion to substantively consolidate these debtors *nunc pro tunc* to the filing date, which given the facts of this case the court finds appropriate. Because resolution of the substantive consolidation issue resolves this issue as a matter of law, the court need not reach the parties' disagreement over the correct legal interpretation of "disbursement" for purposes of setting quarterly fees.

## DISCUSSION

### 1. Substantive Consolidation as of the Petition Date

28 U.S.C. § 1930(a) imposes a mandatory statutory fee upon all chapter 11 debtors:

(a) Notwithstanding section 1915 of this title, the parties commencing a case under title 11 shall pay to the clerk of the district court or the clerk of the bankruptcy court, if one has been certified pursuant to section 156(b) of this title, the following filing fees:

.    .    .    .    .

(6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first. The fee shall be $250 for each quarter in which disbursements total less than $15,000; $500 for each quarter in which disbursements total $15,000 or more but less than $75,000; $750 for each quarter in which disbursements total $75,000 or more but less than $150,000; $1,250 for each quarter in which disbursements total $150,000 or more but less than $225,000; $1,500 for each quarter in which disbursements total $225,000 or more but less than $300,000; $3,750 for each quarter in which disbursements total $300,000 or more but less than $1,000,000; $5,000 for each quarter in which disbursements total $1,000,000 or more but less than $2,000,000; $7,500 for each quarter in which disbursements total $2,000,000 or more but less than $3,000,000; $8,000 for each quarter in which disbursements total $3,000,000 or more but less than $5,000,000; $10,000 for each quarter in which disbursements total $5,000,000 or more. The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.

28 U.S.C. § 1930(a)(6) (2003). Under this statutory scheme, a sliding scale provides for quarterly fees of not more than $10,000 per quarter. AHP–Delaware's disbursements totaled more than $5,000,000 for every quarter at issue, and therefore were

capped at $10,000 per quarter. If fees were individually allocated on the subsidiary level, the UST's collections would be substantially higher (approximately $241,000 greater).

█ The parties agree that the substantive consolidation date is not only important but controlling on this issue. Upon the effectiveness of substantive consolidation, the UST collects statutory quarterly fees from one debtor only. *See UST Policy Manual, www.usdoj.gov/ust/ustp_manual/vol3ch08.htm.* (stating "[s]ubstantively consolidated cases become one case and are subject to only one fee from the time the substantive consolidation order is docketed."). The debtor contends that date is not the date the confirmation was docketed, but the petition date citing the Sixth Circuit's decision in *In re Baker & Getty Financial Servs., Inc.*, 974 F.2d 712 (6th Cir.1992). In opposition, the UST argues that the debtor is judicially estopped from claiming substantive consolidation occurred as of the petition date, since the confirmed chapter 11 plan provides for substantive consolidation as of the confirmation date of the plan. The UST also argues that considerations of due process prohibit substantive consolidation from occurring retroactively solely for purposes of calculation of quarterly fees.

█ The court disagrees with the UST's interpretation of the debtor's confirmed chapter 11 plan. The plan provides:

### ARTICLE VI

### SUBSTANTIVE CONSOLIDATION

The Confirmation of the Plan shall effect the substantive consolidation of the Debtors as follows:

*(a)* The assets of the Debtors shall be treated as a single consolidated estate;

*(b)* A Claim against any one of the Debtors shall be treated as a single claim against the consolidated estate;

*(c)* All intercompany claims between and among the Debtors are eliminated for purposes of this Plan so that such claims shall not be classified, will not vote and will not receive any distribution under this Plan.

*(d)* All claims filed by the same Creditor against more than one Debtor are eliminated to the extent that such claims are duplicate claims;

*(e)* The separate corporate structures of the Debtors shall continue.

(Second Amended Joint Plan of Reorganization, p. 15). The plan defines "Confirmation" as "the entry by the Bankruptcy Court of the Confirmation Order," and defines the Confirmation Date as "the Order confirming the Plan, together with any supplements, amendments or modifications thereto." Under the UST's reading of the plan, the plan unquestioningly provides for substantive consolidation to occur upon confirmation, and therefore, the debtor is judicially estopped from arguing any earlier date.

█ The doctrine of judicial estoppel prevents party from asserting a legal position contrary with one successfully and unequivocally asserted by the same party in a prior proceeding. *In re Duke*, 172 B.R. 575 (M.D.Tenn., 1994). While the substantive consolidation provision in the debtors' confirmed plan is at best unclear, this is clearly not a case for estoppel. The provision in the plan provides what the effect of substantive consolidation will be upon these debtors, but does not appear to provide for the earliest possible date for substantive consolidation to occur. The debtor did not assert an unequivocal legal position in the plan contrary with a posi-

tion now being asserted. Judicial estoppel is not applicable on these facts.

Furthermore, due process concerns are not implicated because this case was not substantively consolidated solely for purposes of calculation of quarterly fees. The court discussed substantive consolidation at great length in the court's Memorandum Decision confirming the plan:

> In exercising its equitable discretion, a bankruptcy court may consolidate cases involving related debtors. 11 U.S.C. §§ 105, 302(b); Fed. R. Bankr.P. 1015(b). "Substantive consolidation is employed in cases where the interrelationships of the debtors are hopelessly obscured and the time and expense necessary to attempt to unscramble them is so substantial as to threaten the realization of any net assets for all of the creditors." *First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs.)*, 974 F.2d 712, 720 (6th Cir.1992) (quoting *Evans Temple Church of God in Christ & Community Ctr., Inc. v. Carnegie Body Co. (In re Evans Temple Church of God in Christ & Community Ctr., Inc.)*, 55 B.R. 976, 981 (Bankr. N.D.Ohio 1986)).[1] Implicit in this decision is the conclusion that the

**FN 1:** The analysis is highly fact-specific in every case. *See FDIC v. Colonial Realty Co.*, 966 F.2d 57 (2nd Cir.1992) (substantive consolidation analysis requires "a searching review of the record, on a case-by-case basis"). Some of the factors developed by the courts are similar to the factors that would be considered in determining whether to pierce the corporate veil of a corporation and hold shareholders liable for the corporation's debts. These include:

1. Parent corporation owns all or a majority of the stock of the subsidiary.
2. Parent and subsidiary have common officers and directors.
3. Parent finances the subsidiary.
4. Parent is responsible for incorporation of the subsidiary.
5. Subsidiary has grossly inadequate capital.
6. Parent pays salaries, expenses or losses of subsidiary.
7. Subsidiary has substantially no business except with the parent.
8. Subsidiary has essentially no assets except for those conveyed by the parent.
9. Parent refers to subsidiary as department or division of parent.
10. Directors or officers of subsidiary do not act in interests of the subsidiary, but take directions from the parent.
11. Formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*See In re Gulfco*, 593 F.2d 921 (10th Cir.1979); *In re Tureaud*, 45 B.R. 658, 662 (Bankr.N.D.Okla.1985), *aff'd, Heller v. Langenkamp (In re Tureaud)*, 59 B.R. 973 (N.D.Okla.1986); *In re Affiliated Foods, Inc.* 249 B.R. 770, 776 (Bankr.W.D.Mo.2000) (listing factors).

Many of the above listed factors are present in this case. *See e.g., Exhibit 23* (showing corporate structure); *Exhibit 26* (showing employee numbers as of 3/7/03).

benefit—protection of the possible realization of any recovery for the majority of unsecured creditors—outweighs the potential harm to any particular creditor. *Id.* Thus, when substantive consolidation is ordered, there is, in effect, a determination that the circumstances of the cases warrant consolidation and that

the best interests of the unsecured creditors are served by joining the assets and liabilities of two or more debtors. *Id.* In this case, the Official Committee of Unsecured Creditors co-proposed consolidation, and the testimony and other proof overwhelmingly establishes that substantive consolidation is not only appropriate but necessary for the efficient reorganization.

Mr. Furlong and Mr. Mills testified very credibly and convincingly as to the need for substantive consolidation in this case. Those reasons included: (1) all of the company's cash is concentrated on the parent level which in turn pays all amounts due to the company's creditors; (2) the officers and directors of the subsidiaries are the same; (3) all subsidiaries are fully owned; (4) all contracts are entered into at the parent level; (5) all employees are hired and paid at the parent level; (6) financial tax statements and tax returns are done on a consolidated basis;[2] (7) the senior secured debt holders named only the parent

*FN 2:* The Lenders suggested that because the debtors are separate legal entities, have filed separate state tax returns and financial statements, engage in separate reporting to Medicare and Medicaid, and because assets and liabilities can be separated, that substantive consolidation is not appropriate. The court disagrees since this is done solely for tax reasons.

company as obligor on the credit facility (with subsidiaries as guarantors); (8) the senior secured debt holders required only consolidated reporting in the past; and (9) substantive consolidation is consistent with the overall business operations of the debtor. Their testimony was credible, uncontradicted, and persuasive.

The court finds no attempt by the debtor to manipulate or otherwise gerrymander votes by substantively consolidating these cases. To the contrary, the court finds extremely credible Mr. Furlong's testimony that the debtor believes, in its best business judgment, that substantive consolidation will return the most to all creditors by pooling the assets and liabilities. The court therefore overrules the Lenders' objections pursuant to 11 U.S.C. § 1129(a)(1), and orders that these debtors be substantively consolidated pursuant to the Second Amended Joint Plan.

*In re American HomePatient, Inc.,* 298 B.R. at 165–66 (footnotes 1 and 2 in original decision; footnote 3 not reproduced here). The court relied specifically on the Sixth Circuit's decision in *First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs.),* 974 F.2d 712, 720 (6th Cir.1992) (quoting *Evans Temple Church of God in Christ & Community Ctr., Inc. v. Carnegie Body Co. (In re Evans Temple Church of God in Christ & Community Ctr., Inc.),* 55 B.R. 976, 981 (Bankr. N.D.Ohio 1986)) to find substantive consolidation was appropriate in this case. Both the *Baker & Getty* and the *Evans Temple* cases hold that substantive consolidation is effective as of the petition date.

The Sixth Circuit decision relied upon the reasoning of the Bankruptcy Court in *Evans Temple* to find consolidation was effective as of the petition date. In *Evans Temple,* a *pro se* debtor filed an individual case and later Evans Temple Church filed a corporate case. The cases were ultimately substantively consolidated and issue of the effective date of substantive consolidation arose in the context of a prepetition transfer by the corporate debtor. The creditor advocated counting the preference period from the corporate filing date, which would be outside the prefer-

ence period. The Bankruptcy Court for the Northern District of Ohio reasoned as follows in its decision to set the earlier petition date as the effective date for substantive consolidation purposes:

> We have found no authority on the issue of whether a debtor who files a petition for relief under the Bankruptcy Code subsequent to the filing by an affiliate may avail itself of the earlier date for purposes of the preference provisions when the cases are later substantively consolidated. So far as we can tell, no decision on this issue has ever been reported. However, an analysis of the purposes behind the doctrine of substantive consolidation and of the preference provisions leads us to conclude that the latter-filing debtor may avail itself of the earlier filing date.

> If the reasons for substantively consolidating two cases filed under the Code is to protect the unsecured creditors of both debtors where the assets and liabilities of the debtors are so intermingled as to make them substantially the same, and if the purpose of the preference provisions is to assure equality of distribution among all creditors, then it logically follows that where two cases are substantively consolidated upon a determination by the Court that the assets and liabilities of each debtor are not clearly separable, the preference provisions require us to treat the creditors of both debtors in substantially the same manner. In order for us to do so, we must assign a like filing date to both Debtors for purposes of the preference provisions. We hold that the Church may avail itself of the February 23, 1984, filing date for purposes of determining whether the payment to Carnegie Body constituted a preference under Section 547.

> We believe our conclusion to lie within the spirit and purposes of the Bankruptcy Code

*Evans Temple,* 55 B.R. at 982. The Sixth Circuit relied on this reasoning in *Baker & Getty* to reject the D.C. Circuit's holding in *In re Auto–Train Corp.,* 810 F.2d 270 (D.C.Cir.1987) which required an additional analysis other than whether substantive consolidation was necessary to determine the effective date of substantive consolidation. The *Baker & Getty* decision held that the distinction between whether a case should be substantively consolidated or not to begin with was so close to the test in *Auto–Train,* that adopting this distinction would not be productive. The Sixth Circuit determined that:

> We believe that the *Evans Temple* rule is sounder, and makes for more certain administration of the Bankruptcy Code. As *Auto–Train* itself noted, the inquiry it proposed will "closely parallel" the inquiry already conducted in ordering consolidation. It would add needless confusion to allow relitigation of this question in the guise of litigation over the filing date, particularly when the outcomes will almost always be the same. The order of consolidation rests on the foundation that the assets of all of the consolidated parties are substantially the same. Therefore, the earliest filing date is the controlling date, and all transfers are to be analyzed as of that date.

*In re Baker & Getty Financial Services, Inc.* 974 F.2d at 721.

■ The court finds the *Baker & Getty* decision persuasive, and controlling in this case. Once the court has undertaken the extensive analysis of whether substantive consolidation should occur in the first instance, it is unnecessary to revisit those same issues for determining the effective date of consolidation. The petition date

should be, and is, the controlling date in the Sixth Circuit. Therefore, the court finds that the effective date for substantive consolidation in this matter is the July 31, 2002 petition date.

### 2. Nunc Pro Tunc Relief

■ Even if the *Baker & Getty* decision is somehow distinguishable because it arose in the context of a preference action, the court would nonetheless find that substantive consolidation of these cases was effective as of the petition date based on the court's extensive examination of the substantive consolidation issue in the context of the confirmation hearing. All of the factors present which supported the court's decision to substantively consolidate the debtors at confirmation were present at the outset of these cases. *See American HomePatient, Inc.*, 298 B.R. at 165–66. In addition to those factors previously listed, the court notes that the UST treated these debtors as one from the petition date, creditors have dealt with one debtor since the petition date and prior thereto, there has been one unsecured creditors committee since the beginning of the case, one monthly report was filed for all debtors since the first month of the case, and numerous other aspects of these cases support substantive consolidation as of the petition date.

A finding that substantive consolidation "relates back" to the petition date if the court is incorrect that it does so under the *Baker & Getty* decision, requires a *nunc pro tunc* analysis of the appropriateness of such relief. The most recognized standard for determining the propriety of a retroactive order of substantive consolidation was identified in *Auto–Train* where the Court stated that "a court should enter a consolidation order *nunc pro tunc* only when it is satisfied that the use of *nunc pro tunc* yields benefits greater than the harm it

inflicts." 810 F.2d at 277; *See also, Kroh Brothers Development Co. v. Kroh Brothers Management Co. (In re Kroh Brothers Development Co.)*, 117 B.R. 499 (W.D.Mo. 1989). Although the Sixth Circuit has declined to adopt this analysis in terms of substantive consolidation, the court finds that based on its earlier ruling that the benefits of substantive consolidation as of the petition date greatly outweigh any harm that such an order would inflict. The court is mindful that this finding generates less revenue for the UST under 28 U.S.C. § 1930, but the harm to the UST's collections is far less than the benefit to all others, including the unsecured creditors, who were co-plan proponents in seeking substantive consolidation. A *nunc pro tunc* finding furthers the Bankruptcy Code's purpose of equality of distribution among creditors, fulfils the collection requirements of 28 U.S.C. § 1930, and reflects the realities of this case.

For all of these reasons, the court finds that substantive consolidation is effective as of the petition date. As such, the UST should have collected one quarterly fee on the disbursements of the consolidated debtor as of the petition date.

### CONCLUSIONS

The court therefore finds that the substantive consolidation order, effective as of the petition date, requires the UST to collect quarterly fees from AHP–Delaware as the consolidated debtor as of the petition date. The court instructs the debtor to prepare an order not inconsistent with this Memorandum Opinion that effectuates the release of funds held in escrow and sets forth any amounts owing by either party based on this Court's ruling. The Order shall be submitted by the debtor to the Court for consideration within ten (10)

days of entry of this Memorandum Opinion.

It is therefore so ORDERED.