[L. A. No. 17728.   In Bank.   Sept. 28, 1942.]

EMIL STARK, Respondent, v. JOHN B. COKER et al.,
Appellants.

Monroe & McInnis for Appellants.

Johnson & Johnson, E. L. Johnson and C. Ashley Johnson for Respondent.

CARTER, J.—Defendants John B. Coker and Regina W. Coker, husband and wife, and Southern California Home Building Company, a corporation, appeal from a judgment against them for $6,000, being one-half of a $12,000 indebtedness represented by a promissory note secured by a deed of trust.

Defendant corporation was organized in 1923, issuing 150 shares of capital stock. Defendant John B. Coker then held some of the stock, finally acquiring a majority of it in 1927,

and was at all times president of the corporation and managed its affairs. Defendant Regina W. Coker became secretary of the corporation in 1926. The corporation was engaged chiefly in dealing in securities and building and selling houses, its business apparently being lucrative until 1929, when it began to decline. Hilda A. Stark, who married plaintiff in 1925, owned some of the stock, and from 1924 to 1928, loaned various sums to the corporation, some of which were repaid, culminating in an indebtedness owed to her of $12,000, represented by notes secured by a deed of trust. After 1929, the corporation was chiefly engaged in attempting to liquidate its affairs. After 1930, no directors were elected or functioned or stockholders' meetings held, the affairs being controlled and conducted by defendant John B. Coker. Interest on the indebtedness to Mrs. Stark was paid until 1933, but at a reduced rate with her consent. On January 29, 1934, the corporation, by John B. Coker as president and Regina Coker as secretary, executed its promissory note for $12,000, payable to plaintiff and his wife Hilda as joint tenants on January 1, 1936. That was the first time plaintiff's name appeared in the transaction; however, he had advanced a portion of the funds to Hilda to make up the original loan by her to the corporation. The court found that that note was a renewal of the prior obligation. The note was secured by a trust deed in which the corporation was the trustor, Hilda Stark the trustee and plaintiff and Hilda Stark the beneficiaries in joint tenancy.

Hilda Stark as trustee executed a deed of reconveyance on March 14, 1936, of the property embraced in the trust deed, which thereafter in 1937, she sought to have set aside by an action resulting on November 30, 1938, in a final judgment for the corporation. Plaintiff here was one of the plaintiffs in that action, but was affected by the judgment only to the extent hereinafter appearing.

Thereafter the instant action was commenced by plaintiff to foreclose the trust deed and for a deficiency judgment based upon a claim for one-half the note, or $6,000. He amended his complaint at the trial, alleging the security to be worthless and praying for a personal judgment on the note. He named the corporation and the Cokers as defendants, basing the alleged liability of the latter on the asserted right to have the corporate entity disregarded. The judgment from which this appeal is taken was against all of those

defendants and as to the Cokers was based upon that theory. He also named his wife, Hilda, defendant. She claims nothing against the corporation or the Cokers in this action. Defendants raised the general issue and urged several special defenses which will be hereafter considered.

With reference to the judgment of November 30, 1938, various claims are made by the parties. The court found in the instant action that plaintiff was the owner of a one-half interest in the note in question and that plaintiff here was not bound by the reconveyance involved in the above-mentioned judgment. Defendants contend that the judgment in the action against the corporation to set aside the reconveyance which had been made by Hilda Stark as trustee was res judicata and a bar to the present action. In that action plaintiff and Hilda Stark charged that the deed of reconveyance had never been executed by Hilda and that they had never received any consideration therefore, and that the note was unpaid. The court found that Hilda Stark executed the reconveyance as trustee and should take nothing by her action, and in finding VI stated: "That plaintiff, Emil Stark, had no notice or knowledge of the execution, acknowledgment and delivery of said full reconveyance by the plaintiff, Hilda A. Stark, as Trustee." In its conclusions of law it declared: "That by reason of the facts set forth in finding number VI the judgment herein should be without prejudice to the right of the plaintiff, Emil Stark, to establish or determine his rights, if any, in and to the real estate covered by said trust deed, in another action." Judgment was accordingly entered. Nothing is expressly said in either the findings or the judgment as to the status of the liability on the note, and it is not found that the reconveyance was binding upon plaintiff herein. Defendants refer to evidence in the instant action that Coker's contention in the former action was that the reconveyance was made as a part of an accord and satisfaction with Hilda Stark of the debt for $3,000, a part of which is still unpaid by Coker. The same accord and satisfaction was pleaded by defendants in the instant action. Defendants claim that the judgment conclusively determined that an accord and satisfaction occurred and that any and all rights of plaintiff and Hilda Stark in the note and trust deed had been thereby extinguished.

While it is true that as a general rule a judgment is a

bar as res judicata not only as to a subsequent action on the same matter actually determined, but also as to all issues that might have been litigated as incident to or essentially connected with the subject matter of the litigation and every matter coming within its legitimate purview. (Code of Civ. Proc., § § 1908, 1911; 15 Cal. Jur. 142, et seq.), it is also true that that only is adjudged in a former judgment which appears upon its face to have been adjudged or which was actually and necessarily included therein or necessary thereto. (Code Civ. Proc., § 1911.) And when it affirmatively appears that an issue was not determined by the judgment, it obviously is not res judicata upon that issue. A judgment is not an adjudication as to matters which the court expressly refrains from determining. (*Watson* v. *Poore*, 18 Cal. (2d) 302 [115 P. (2d) 478]; 15 Cal. Jur. 150.) It is apparent that the judgment of November 30, 1938, did not determine that plaintiff had no further rights with reference to the property covered by the trust deed giving as its reason that plaintiff had no notice or knowledge of the reconveyance of the property. To argue that the court's judgment was erroneous is idle because the judgment is final and the reservation of plaintiff's rights as well as the other terms of the judgment are binding upon the parties. The judgment expressly stated that it was without prejudice to plaintiff's right to establish "his rights, if any, in the real property covered by said trust deed." The only reasonable interpretation of the judgment is that the court did not purport to adjudicate that plaintiff was without rights under the note because he would not have any right in the property except such as would be based on the continued existence of the indebtedness, and any interest he had in the property was predicated upon the trust deed which was in turn based upon the indebtedness. Those rights in the property were reserved in the judgment. It further necessarily follows that he is not estopped to assert that his interest in the note has not been paid, and that therefore he may in this action resist any claim of accord and satisfaction made by defendants. Hilda Stark is claiming nothing in this action, and thus, even though she may be estopped to assert that there was not an accord and satisfaction, plaintiff is left free to litigate the matter. In essence it might be said with respect to those matters, as was stated by defendants' counsel at the trial, that nothing was decided as to plaintiff by the judgment of November 30, 1938.

844

Defendants assert, however, that there has been an improper splitting of actions on the note. Assuming their premise the result is not altered because the judgment of November 30, 1938, was in effect a determination that a splitting of causes of action was proper. The judgment accomplished that very result if it be conceded that it determined Hilda Stark's right but left plaintiff's rights for determination in a future action. That judgment even though erroneous is final and binding upon the parties.

If it be said that a narrow interpretation of the judgment of November 30, 1938, be correct, that is, that it determined that an accord and satisfaction occurred and the only thing left to be determined with reference to plaintiff was whether that accord and satisfaction was binding upon him (and there might be some merit to that position since the reason given in the findings for not determining plaintiff's rights in the property was lack of knowledge on his part of the accord and satisfaction), yet the judgment for plaintiff for the $6,000 in the instant action should stand. It cannot be doubted that: "An obligation in favor of several persons is extinguished by performance rendered to any of them, except in the case of a deposit made by owners in common, or in joint ownership, which is regulated by the title on deposit." (Civ. Code, sec. 1475.) That rule cannot be applied under the circumstances presented here. The note was made payable on its face to plaintiff and Hilda Stark as joint tenants. Likewise, those two persons were named beneficiaries in a joint tenancy capacity. Defendants having executed those instruments will be deemed to have known the authority of those persons as to each other with respect to one of them entering into an accord and satisfaction of the debt. The note was not fully paid. A $12,000 obligation was purportedly discharged for $3,000, only half of which was paid in cash and the balance has not yet been paid. Plaintiff had no knowledge of the purported accord and satisfaction and did not authorize it. The status of the owners of the note being joint tenancy, it is no more than proper under the circumstances that the rules with respect to joint tenancy be applied. One of the characteristics of joint tenancy is the equality of the interest held by the respective tenants; (Civ. Code, sec. 683) and defendants by giving the note and trust deed were advised of that rule. It has been consistently held that one joint tenant has not by reason of the relationship any authority to bind

his cotenant with respect to the latter's interest in the common property. (See *Oberwise* v. *Poulos,* 124 Cal. App. 247 [12 P. (2d) 156]; *Simpson* v. *Bergmann,* 125 Cal. App. 1 [13 P. (2d) 531]; *Swartzbaugh* v. *Sampson,* 11 Cal. App. (2d) 451 [54 P. (2d) 73].)

With reference to the alleged accord and satisfaction to which reference has heretofore been made, defendants assert that a settlement of the note was reached with Hilda Stark. That defense cannot avail them on this appeal for two obvious reasons. First, as heretofore determined, under the judgment of November 30, 1938, plaintiff was not estopped to assert that there was no accord and satisfaction, and even if an accord and satisfaction is decreed to have existed as to Hilda Stark by reason of that judgment, she is claiming nothing in this action. Plaintiff may, as he did, claim that no accord and satisfaction occurred. The evidence in the instant action on that subject was conflicting but with that we are not concerned. Hilda Stark testified that there was no accord and satisfaction, and plaintiff testified that the note had not been paid and that he had no knowledge of any such transaction. Second, even if an accord and satisfaction was accomplished by Hilda Stark, it was not under the rules above discussed binding upon plaintiff as to his half interest in the obligation.

It is urged that plaintiff was improperly permitted to amend his complaint altering his action from one of foreclosure of the trust deed to one for a personal judgment on the note, and that at the time the amended complaint was filed the action on the note was barred by section 337 of the Code of Civil Procedure. The sole question is whether plaintiff in fact changed his cause of action as contemplated in the rule that a plaintiff may not state a new cause of action by amending his complaint when the statute of limitation has run on the new cause of action. In his amendment plaintiff alleged that the security covered by the trust deed had become valueless. It may be conceded that an independent action may not be brought upon a note secured by a trust deed without first exhausting the security or showing that it is valueless, and that there is but one form of action for the recovery of a debt secured by a trust deed, which is one to foreclose the trust deed. (Code Civ. Proc., § 726; *Bank of Italy etc. Assn.* v. *Bentley,* 217 Cal. 644 [20 P. (2d) 940].) But by his amendment plaintiff did

not state a new cause of action. When the security has become valueless, plaintiff does not state a new cause of action where the result of his amendment is to plead a cause of action on the note alone and an abandonment of his claim for the foreclosure of the trust deed securing it as stated in the original complaint. (See *Commercial Centre R. Co.* v. *Superior Court,* 7 Cal. (2d) 121 [59 P. (2d) 978, 107 A. L. R. 714].)

This brings us to defendants' chief contention, that the evidence was insufficient to justify the trial court in disregarding the corporate entity of defendant corporation and holding defendants Coker individually liable on the note which was executed by the corporation alone. The conditions under which the corporate entity may be disregarded, or the corporation be regarded as the *alter ego* of the stockholders, necessarily vary according to the circumstances in each case inasmuch as the doctrine is essentially an equitable one and for that reason is particularly within the province of the trial court. Only general rules may be laid down for guidance. The basic rule was recently stated by this court in *Watson* v. *Commonwealth Ins. Co.,* 8 Cal. (2d) 61, 68 [63 P. (2d) 295]:

"The two requirements are that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and that adherence to the fiction of separate existence would, under the circumstances, promote fraud or injustice. On the second score it is sufficient that it appear that recognition of the acts as those of a corporation only will produce inequitable results." We believe there was sufficient evidence before the lower court to justify it in determining that those requirements were met. There were several pertinent circumstances. Assuming that at the time of the original indebtedness incurred between 1924 and 1928, the evidence indicates that there was no ground for piercing the corporate veil, it appears that from 1931 to 1934, the date of the note in question, and thereafter, there were no officers elected, no board of directors or stockholders' meetings held and no minute entries. At all of those times defendant John B. Coker was president of the corporation, owning 139 of the 150 outstanding shares of stock. His wife, defendant Regina Coker, was secretary of the corporation and owned 1 share of stock. The other 11 shares were held in escrow in a bank, the whereabouts of the owner thereof being un-

known and he did not participate in the corporation's business. The affairs of the corporation were conducted by John B. Coker. The stock had no market value. The affairs of the corporation were conducted at the home of the Cokers. The corporation had no business and at the time of the trial in 1940, it had no assets. In 1934, it had several houses which were encumbered; the holders of the mortgages foreclosed "and took the property and wiped the corporation out." Coker testified that in 1934, the corporation was engaged "in servicing mortgages and trust deeds to be sold" and that he was "handling negotiable paper, mortgages and trust deeds," and such properties as he owned, he was renting out. Coker kept the books of the corporation although his wife was secretary. In negotiating the purported accord and satisfaction Coker claimed he was personally liable for the obligation to pay the $3,000. It appears that he personally was negotiating to purchase the note in question from Hilda Stark. But the checks drawn assertedly in payment on the purported accord and satisfaction agreement were paid from the corporation's bank account, and Coker considered that when the deed of reconveyance was made, the obligation of the corporation would be extinguished. In 1934, Regina Coker was receiving a salary of $25 a week and John B. Coker received $1,100 as salary during that year. He stated that he was paid $75 a week from 1927, as long as the corporation had money to pay him. Hilda Stark testified with reference to conversations with Coker: "At that time (January, 1934) and also at other times, Mr. Johnson, not only that time, Mr. Coker expressed great satisfaction over the fact that now he had gotten all the stock away from the other stockholders and had it himself. Before that, he also expressed satisfaction that he had gotten this stock to himself so that nobody could interfere. For instance, his father could not come in there and look over his books and buy stock certificates from somebody and mislay those books and so on and so forth and so I said, 'Well, then in any corporation, don't you have to be several people? What is the Southern California Home Building Company? How many are in the Southern California Home Building Company?' He says, 'I am the Southern California Home Building Company.' 'I am.' I says, 'Your wife?' 'Yes,' he said, 'my wife.'" Coker had stated to a third person that the plaintiff and Hilda Stark were not good business people and he "intended to beat them out of

the money he owed them.'' This evidence establishes that the Cokers and the corporation were one and the same person. By accepting the note and trust deed here in question, a new party payee, plaintiff, was added, and the time for the payment of the obligation was extended, the note being a renewal. By granting that renewal an action upon the note was delayed. Plaintiff might have been able to recover a substantial portion of the indebtedness if that extension had not been granted. But the extension was granted, and in a transaction in which Coker declared that he and his wife were the corporation. Although there is no direct evidence to that effect, it may well be inferred that the renewal note was accepted under the belief that Coker and his wife were in reality the true parties obligated. These facts would justify the trial court in determining that the corporation was the *alter ego* of the Cokers and that in order to prevent injustice the corporate entity should be disregarded to the extent of imposing personal liability upon the Coker defendants.

In connection with the claim of insufficiency of the evidence on the *alter ego* doctrine, defendants contend that error was committed by the trial court in refusing their offer of proof of the circumstances bearing upon that subject in 1924, when the indebtedness was originally incurred, urging that the note here in question was merely a renewal note, that is, an extension of time for payment but not payment of the original debt, and that under such circumstances the evidence bearing on the *alter ego* doctrine should relate only to the time when the original indebtedness was incurred. Even if defendants' premise be accepted they have suffered no prejudice. In discussing the evidence in support of that doctrine, we assumed that when the indebtedness was originally incurred, there were no grounds for disregarding the corporate entity. Consideration was given for the renewal of the note by plaintiff. The time for payment was extended which in effect was a forbearance of suit or foreclosure on the former note or trust deed. A new party payee was named in the renewal instruments. Plaintiff's position was altered by accepting the renewal note, and therefore the circumstances at the time of the execution of the renewal note became important with relation to the parties liable and the application of the doctrine. In relinquishing the right to collect the indebtedness against the corporation by accepting the renewal note, plaintiff had the right to

hold the Coker defendants liable, thereby disregarding the corporate entity in order to prevent injustice to him.

Defendant Regina Coker particularly urges that there is no evidence upon which a personal judgment against her could be based, but as we have seen she with her husband were the only officers of the corporation and Coker declared that he and she were the company.

The judgment is affirmed.

Shenk, J., Curtis, J., Edmonds, J., Traynor, J., and Peters, J. pro tem., concurred.

Gibson, C. J., concurred in the judgment.

Appellants' petition for a rehearing was denied October 26, 1942.