**FIRSTMARK CAPITAL CORPORATION, a Delaware corporation, Plaintiff–Appellee,**

**v.**

**HEMPEL FINANCIAL CORPORATION, dba Hempel Leasing Corporation, a California corporation; Professional Capital Corporation, a California corporation; Hempel Financial Services, a corporation; Bruce Hempel; and Nancy Hempel, Defendants–Appellants.**

No. 87–5884.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 2, 1988.

Decided Oct. 3, 1988.

Norman D. James, Los Angeles, Cal., for defendants-appellants.

Megan Scott–Kakures, Loeb and Loeb, Los Angeles, Cal., for plaintiff-appellee.

Before HUG, KOZINSKI and THOMPSON, Circuit Judges.

HUG, Circuit Judge:

Nancy Hempel ("Mrs. Hempel") appeals the district court's judgment imposing on her liability as a corporations' alter ego in the amount of $854,991.94. The case was tried without a jury, and the district court's findings of fact are not disputed. The principal question presented is whether alter ego liability can be imposed on a spouse on the basis that she owns a community property interest in the stock of a corporation and received benefits from her husband's abuse of the corporate structure. We hold that more is required.

## I.

## FACTS

Mrs. Hempel was married to Bruce Hempel ("Mr. Hempel") at all times material to this case. Mr. Hempel owned 95% of the stock in Hempel Financial Corporation ("HFC"), and Mrs. Hempel had a community property interest in her husband's shares. Mr. Hempel was president and chief executive officer of the corporation; Mrs. Hempel held no corporate office.

HFC entered into a series of agreements with the plaintiff, Firstmark, whereby Firstmark supplied funds to HFC. HFC used these funds to buy medical equipment from doctors who then leased the equipment back from HFC. Firstmark held a security interest in the equipment. Under the agreements between HFC and Firstmark, HFC was to remit monthly lease payments from the doctors to Firstmark. HFC and Mr. Hempel, however, failed to make the required payments. The court found that HFC and Mr. Hempel defrauded Firstmark and converted funds owed to Firstmark.

An alter ego relationship between Mr. Hempel and HFC is stipulated. Mr. Hempel's alter ego liability is based on the foregoing facts, as well as undercapitalization of HFC; disregard of corporate formalities; Mr. Hempel's use of corporate funds for his own and Mrs. Hempel's personal purposes; and the concentration of equity ownership and corporate control in Mr. Hempel's hands.

The district court found that Mrs. Hempel benefited from much of the conduct on which Mr. Hempel's alter ego liability is founded. She also loaned money to the corporation and received payments from it. The court found that Mrs. Hempel's interest in HFC was based solely on her community property interest in Mr. Hempel's shares.[1] The court stated that Mr. Hempel made all the important management decisions for HFC, including those that resulted in the corporate activity that underlies the alter ego liability and fraud judgment.

The court did not find that Mrs. Hempel participated in these decisions or conduct. Nonetheless, it imposed on Mrs. Hempel alter ego liability equal to that of Mr. Hempel, excluding liability for fraud. Because Mr. Hempel and HFC are judgment proof, Mrs. Hempel's separate property is the only means available to compensate Firstmark for its damages.

Mrs. Hempel appeals the imposition of liability on her as an alter ego for HFC's corporate debts. To decide this appeal, we must resolve two legal issues. The first issue is whether Mrs. Hempel's community property interest in corporate shares owned by Mr. Hempel is a sufficient ownership interest upon which to found alter ego liability. The second issue is whether Mrs. Hempel can be held liable as an alter ego for mere passive receipt of the benefits of the conduct that produced Mr. Hempel's alter ego liability.

## II.

## JURISDICTION AND CHOICE OF LAW

The district court's jurisdiction is based on the parties' diversity and the amount in controversy, and is not disputed. 28 U.S.C. § 1332 (1982). Appellate jurisdiction is based on a final order and timely notice of review. 28 U.S.C. § 1291. The facts of this case are not in dispute. Because the issues before us are purely legal, our review is *de novo. Parola v. Weinberger,* 848 F.2d 956, 958 (9th Cir.1988). The parties do not dispute that the law of California controls this case. *See Button v. Connecticut General Life Insurance Co.,* 847 F.2d 584, 585 (9th Cir.1988) (substantive law of the forum state is controlling). "This court ... is bound to follow the law of [California] as determined by statute or a decision of its supreme court. Furthermore, we have said that this court must follow the decision of an intermediate state court unless other persuasive authority convinces us that the state supreme court would decide otherwise." *Spinner Corp.*

---

1. Mrs. Hempel owned a security interest in HFC's stock and assets pursuant to a loan agree- ment, but she never foreclosed or took an ownership interest under the loan agreement.

*v. Princeville Development Corp.,* 849 F.2d 388, 390 n. 2 (9th Cir.1988).

## III.

## ANALYSIS

The basis of this appeal is the following statement of law made by the district court:

> The problem which has troubled this court at the conclusion of the trial was whether a wife, who owned a community interest in a corporation, and who very substantially benefited from the activities which led to the imposition of alter ego liability, is nevertheless subject to the same alter ego liability if she merely passively enjoys the benefits of the disregard of the corporate entity. A careful review of the California decisions indicates that the answer is "yes."

We give thorough consideration to the district court's conclusions of state law, however, we must independently review the state ·law on appeal. *Matter of McLinn,* 739 F.2d 1395 (9th Cir.1984) (en banc). In this case we arrive at a different conclusion on this point of state law than did the district court.

The California Supreme Court has stated the California law of alter ego liability as follows:

> Before the acts and obligations of a corporation can be legally recognized as those of a particular person, and vice versa, the following combination of circumstances must be made to appear: First, that the corporation is not only influenced and governed by that person, *but that there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased;* second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.

*Wood v. Elling Corp.,* 20 Cal.3d 353, 142 Cal.Rptr. 696, 702–03 n. 9, 572 P.2d 755, 761–62 n. 9 (1977) (citation omitted; emphasis in original); *accord Arnold v. Browne,* 27 Cal.App.3d 386, 394, 103 Cal.Rptr. 775 (1972). A California Court of Appeal stated the rule thus, "The fraud or inequity sought to be eliminated must be that of the party against whom the alter ego doctrine is invoked, and 'such party must have been an actor in the course of conduct constituting the "abuse of the corporate privilege"....'" *American Home Insurance Co. v. Travelers Indemnity Co.,* 122 Cal. App.3d 951, 175 Cal.Rptr. 826, 834 (1981) (citations omitted). We have held that under California law the "kind of 'inequitable result' that makes alter ego liability appropriate is an abuse of the corporate form, such as under-capitalization or misrepresentation of the corporate form to creditors." *Orloff v. Allman,* 819 F.2d 904, 909 (9th Cir.1987).

Ownership of an interest in the corporation is an essential part of the element of unity of ownership and interest. If an individual's ownership is not established, the corporation's obligations cannot be imposed on him or her. *Riddle v. Leuschner,* 51 Cal.2d 574, 335 P.2d 107, 111 (1959). In *Riddle,* the court wrote that "[t]he fact that Mrs. Leuschner had one share of ... stock is sufficient to hold her personally liable to creditors of that corporation provided that the alter ego doctrine is otherwise applicable." *Id.* 335 P.2d at 111. Mrs. Leuschner's husband, who was "regarded as ... a managing employee," held no stock and, therefore, the unity of ownership and interest element was disproved as to him. *Id.* Therefore, he was not held personally liable for corporate debts despite his participation in the conduct from which the debts arose. Community property was not discussed in the opinion, and we infer that it was not at issue.

In Mrs. Hempel's case, we agree with the district court that her community property interest in Mr. Hempel's stock holdings, which arises under Cal.Civ.Code § 5105 (West 1985), is sufficient to satisfy the ownership requirement. Ownership of stock, however, is merely a threshold question under California's alter ego doctrine. After ownership is established, the proper analysis proceeds to determine whether

"the alter ego doctrine is otherwise applicable." *Riddle*, 335 P.2d at 111.

The second issue before us is whether Mrs. Hempel can be held liable as an alter ego "if she merely passively enjoys the benefits of the disregard of the corporate entity." Under our reading of California law, the answer is "no." The *Wood* and *American Home Insurance Co.* cases limit application of the alter ego doctrine to individuals who influence and govern the corporation, *Wood*, 572 P.2d at 761–62 n. 9, or who were actors in the course of conduct constituting the abuse of the corporate privilege. *American Home Insurance Co.*, 175 Cal.Rptr. at 834. Here, the district court found that "all important management decisions including those which brought alter ego liability in the operation of the business were made by Mr. Hempel. While Mrs. Hempel was employed by the corporation, her employment was primarily in a clerical capacity, not in the management capacity." We conclude that the district court's findings regarding Mrs. Hempel's participation in the conduct of HFC's affairs are insufficient to allow imposition of alter ego liability on her.

The district court relied heavily in its analysis on three cases, *Riddle*, 335 P.2d 107; *Stark v. Coker*, 20 Cal.2d 839, 129 P.2d 390 (1942); and *Schoenberg v. Benner*, 251 Cal.App. 154, 59 Cal.Rptr. 359 (1967). In *Riddle*, the dissent stated that Mrs. Leuschner "was actually a housewife ... who had little knowledge of the affairs of the corporation ... and who only did the bidding of her husband...." 335 P.2d at 113 (Schauer, J., dissenting). However, the majority expressly indicated that "Mrs. Leuschner controlled and dominated the corporations ..." *Id.* at 111. Moreover, Mrs. Leuschner was also secretary and a director of the corporation whose obligations were imposed on her. *Id.* at 109. Plainly, she was not considered a passive beneficiary.

In the *Stark* case, a Mr. and Mrs. Coker were held liable as alter egos for the debts of a corporation. 129 P.2d at 396. Mrs. Coker's liability appears to have been based on her status as one of two officers of the corporation and her husband's declaration that he and she were the corporation. *Id.* Thus, we conclude that Mrs. Coker's alter ego liability was not based on mere passive receipt of benefits.

In the *Schoenberg* case, alter ego liability was imposed on a Mr. and Mrs. Koutnik, 59 Cal.Rptr. at 368–69. There is no indication in the opinion that Mrs. Koutnik appealed her alter ego liability distinct from that of her husband, or that she claimed to be a passive beneficiary. Moreover, Mrs. Koutnik was found to have been secretary of the corporation, a director, and part owner, and to have had authority to sign corporate checks. *Id.* at 367. We do not read this opinion to allow the imposition of alter ego liability for mere passive receipt of benefits.

In concluding our analysis of these three cases, we note that even if they could be interpreted as allowing the imposition of alter ego liability on a passive beneficiary spouse, such an interpretation would flatly contradict the later statement of the rule by the California Supreme Court in *Wood*, 572 P.2d at 761–62 n. 9 (quoted above) that requires the alter ego to influence and govern the corporation.

## IV.

## CONCLUSION

The district court did not make explicit findings on whether Mrs. Hempel influenced and governed the corporation or was an actor in the course of conduct that constituted the abuse of the corporate privilege such as to impose alter ego liability under the standard of *Wood* and *American Home Insurance Co.*.

We reverse and remand for the district court to consider the imposition of alter ego liability under this standard.

**REVERSED AND REMANDED.**