Filed 3/25/16  Kayne v. Mense CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| FRED KAYNE, Individually and as Trustee, etc., <br><br> Plaintiff, Cross-defendant and Appellant, <br><br> v. <br><br> RALPH MENSE et al., <br><br> Defendants, Cross-complainants and Appellants. | B254975 <br><br> (Los Angeles County Super. Ct. No. BC468228) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Ernest M. Hiroshige, Judge.  Affirmed in part and reversed in part with directions.

Dongell Lawrence Finney, John A. Lawrence, Matthew Clark Bures, Ani Adjemian, Benjamin L. Caplan; Esner, Chang & Boyer, Stuart B. Esner; Albright, Yee & Schmit, Benjamin L. Caplan; and John A. Lawrence for Plaintiff, Cross-defendant and Appellant.

Hillel Chodos; Sheppard, Mullin, Richter & Hampton, Martin D. Katz and Robert J. Stumpf for Defendants, Cross-complainants and Appellants.

_____

Defendants and cross-complainants Raphael Mense and Cottonsmith, LLC (Cottonsmith) appeal from a judgment following a jury trial, in which the jury found that Mense had breached a fiduciary duty owed to plaintiff Fred Kayne and acted with oppression, fraud, or malice; that Mense and Cottonsmith had breached two contracts with Kayne; and that Mense and Cottonsmith had violated Penal Code section 496, subdivision (a) by embezzling the money owed Kayne under one of those contracts. The jury further found in favor of Kayne and against Mense and Cottonsmith on all causes of action in their cross-complaint. Mense and Cottonsmith raise numerous contentions on appeal.

Kayne also appeals from the judgment, arguing the trial court erred by failing to include prejudgment interest as part of the "actual damages" tripled pursuant to Penal Code section 496, subdivision (c).

We reverse with respect to the jury's finding on the Penal Code section 496 cause of action and the attendant award of attorney fees and treble damages, but otherwise affirm.

## BACKGROUND

Kayne was the majority owner of Fortune Fashion Industries, LLC (FFI), which screen printed T-shirts and sold them to retailers. In 1994 Kayne, Mense, FFI, and others formed Cottonsmith to manufacture plain T-shirts to sell to FFI and others for dying or printing. From 1995 until 2006 Kayne and Mense were the sole shareholders of Cottonsmith, with each owning 50 percent. In 2006, Kayne and Mense entered into an "Amended and Restated Operating Agreement" that reduced Kayne's share to 10 percent, increased Mense's to 90 percent, and made Mense the sole manager of Cottonsmith in exchange for Mense's promise to eliminate Kayne's guaranty of Cottonsmith's line of credit. According to Kayne, Mense and Cottonsmith failed to do so, notwithstanding Kayne's numerous requests.

By September 2010, FFI was experiencing financial difficulty and owed Cottonsmith a great deal of money. FFI had pending shirt orders from two customers and

2

wanted to order shirts from Cottonsmith to fulfill those orders, but Cottonsmith refused to accept FFI's order due to the outstanding debt. The parties met and negotiated the "Fabric Purchase Agreement" at the heart of most of the claims in this case, the nature and terms of which are contested. According to Kayne, he personally advanced and entrusted to Cottonsmith $750,000, which the parties understood and agreed was not a loan, but an advance to purchase fabric to manufacture shirts to fill FFI's order, with Kayne owning the fabric and bearing the risk of loss. If FFI was unable to purchase the shirts Cottonsmith manufactured, Cottonsmith could sell the shirts to another buyer. In any event, Kayne would be repaid $750,000 from the sale of the shirts (to FFI or others) or the fabric. According to Mense and Cottonsmith, the transaction was a $750,000 loan by Kayne to FFI to be treated by Cottonsmith as an advance for the T-shirts being ordered, so that after they were manufactured, the $750,000 "would be credited against the purchase price which would otherwise have been payable by FFI to Cottonsmith on delivery of the completed" shirts.

The parties agree that Cottonsmith purchased the fabric and manufactured the T-shirts, but FFI was unable to purchase them, so Cottonsmith sold them to another buyer. Instead of paying Kayne $750,000 from the proceeds of that sale, Cottonsmith credited it against FFI's outstanding debt to Cottonsmith.

Kayne filed this action against Mense and Cottonsmith on August 24, 2011. He asserted two breach of contract causes of action, one pertaining to failure to repay Kayne $750,000 pursuant to the Fabric Purchase Agreement and the other alleging breach of the Amended and Restated Operating Agreement through (1) wrongful distributions to Mense of at least $2,648,000, (2) refusing to provide financial records for Cottonsmith for 2011, and (3) failing to pay funds due to Kayne under the agreement. He further alleged conversion of the $750,000 fabric advance against Mense and Cottonsmith and breach of fiduciary duty against Mense, which was based upon the conversion of the $750,000 fabric advance, failure to pay Kayne amounts due under the Amended and Restated Operating Agreement, failing to eliminate Kayne's personal guaranty, failing to

3

disclose the $2,648,000 in distributions, and failure to provide financial information. Kayne also sought rescission of the Amended and Restated Operating Agreement, an accounting, and imposition of a constructive trust.

Mense and Cottonsmith cross-complained against Kayne and his family trust. Cottonsmith alleged Kayne committed fraud by representing to Mense that FFI would be able to pay Cottonsmith in full for everything Cottonsmith supplied to FFI and by concealing FFI's "desperate financial predicament," thereby inducing Cottonsmith to deliver its products to FFI, incur costs for the benefit of FFI, and pay Kayne a consulting fee. Cottonsmith further alleged these acts constituted a breach of Kayne's fiduciary duty and that receipt of the consulting fee unjustly enriched Kayne. It further alleged Kayne breached his guaranty of FFI's credit memo to Cottonsmith by refusing to pay. Cottonsmith also alleged breach of contract by Kayne as FFI's alter ego, with respect to both failing to pay FFI's debt to Cottonsmith and failing to pay Cottonsmith 50 percent of revenues generated through FFI sales to Cottonsmith's former customers, as agreed in 2009. Mense also alleged fraud and breach of fiduciary duty against Kayne based on all prior allegations.

The trial court granted Cottonsmith and Mense summary adjudication of Kayne's conversion cause of action because it pertained to money in general, not specific, traceable money capable of identification, and was indistinguishable from the breach of contract claim. The court granted Kayne summary adjudication of Cottonsmith's breach of contract claim on the ground Kayne had established that he was not FFI's alter ego.

On April 11, 2013, about one month before trial commenced, Kayne obtained leave to amend his complaint to add a cause of action alleging that Cottonsmith and Mense violated Penal Code section 496 through embezzlement of the $750,000 fabric advance. Kayne alleged he entrusted defendants with $750,000 for the specific, agreed purpose of purchasing fabric, with the understanding that the money would be returned to him, but defendants "intentionally and fraudulently appropriated" the money for their own purposes and failed to reimburse Kayne from the proceeds of the sale of the fabric or

4

shirts made from it.  Kayne further alleged defendants had no right to retain that money or apply it to FFI's debt to Cottonsmith.  Kayne sought the remedies provided by Penal Code section 496, subdivision (c), i.e., treble damages, attorney fees, and costs.

Following a 19-day trial, the jury, using a special verdict form, returned verdicts for Kayne and against Cottonsmith and/or Mense on all claims submitted to it.  Specifically, the jury found Cottonsmith and Mense breached the Amended and Restated Operating Agreement and awarded damages of $844,899.  The jury also found Cottonsmith and Mense breached the Fabric Purchase Agreement and awarded Kayne damages of $892,500.  The jury further found Mense breached a fiduciary duty to Kayne and acted with oppression, fraud, or malice.  The jury also found Cottonsmith and Mense violated Penal Code section 496.  The jury also found for Kayne on every cause of action in the Mense-Cottonsmith cross-complaint.

In a bifurcated trial on the amount of punitive damages, the jury awarded Kayne $750,000 in punitive damages.  The court tried Kayne's rescission claim and found against him.

The court entered judgment on January 27, 2014.  The judgment included $2,997,698 for compensatory damages and civil penalties, excluding costs and attorney fees, and $132,227 in prejudgment interest against Cottonsmith and Mense.  It further provided for recovery of $750,000 in punitive damages plus $35,881.77 in prejudgment interest on the punitive damages against Mense.  Finally, it provided that Kayne "shall recover" his costs and reasonable attorney fees against both defendants, but left the amounts blank for determination.

Defendants filed their notice of appeal on March 5, 2014.  At that time, both defendants had already filed bankruptcy proceedings.  Kayne moved to dismiss the bankruptcy petitions as filed in bad faith, and on April 15, 2014, the bankruptcy court dismissed the petitions.

In March of 2014 Kayne filed his cost memorandum and motion for attorney fees under authority of Penal Code section 496, subdivision (c).  In June of 2014 he filed a

motion for attorney fees incurred in resisting defendants' bankruptcy petitions, pursuant to Code of Civil Procedure section 685.040. Defendants moved to tax costs and opposed the motions for attorney fees. On August 29, 2014, the trial court denied the motion to tax costs and granted both of Kayne's motions for attorney fees for the full amounts requested.

Kayne filed a cross-appeal on April 17, 2014.

## DISCUSSION

**1.    Pertinent principles of appellate review**

"'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) An appellant must provide an adequate record, affirmatively demonstrate reversible error, and support his or her argument by citation to the record and supporting legal authority. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 (*Nwosu*).) Failure to support a contention with reasoned argument and citation of authority results in forfeiture of the contention. (*Lewis v. City of Benicia* (2014) 224 Cal.App.4th 1519, 1539.) In addition, "The burden is on the appellant in every case to show that error has resulted in a miscarriage of justice. [Citation.] Further, 'appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice.' [Citation.]" (*County of Los Angeles v. Nobel Ins. Co.* (2000) 84 Cal.App.4th 939, 945.)

We presume that the record contains evidence to support every finding of fact. (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887.) "It is the appellant's burden, not the court's, to identify and establish deficiencies in the evidence. [Citations.] 'A party who challenges the sufficiency of the evidence to support a particular finding must *summarize the evidence* on that point, *favorable and unfavorable,* and *show how and why it is insufficient.* [Citation.]' [Citation.] . . . 'He cannot shift this burden onto respondent, nor is a reviewing court required to undertake an independent examination of the record

6

when appellant has shirked his responsibility in this respect.'" (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409 (*Huong Que*).) "An appellate court will consider the sufficiency of the evidence to support a given finding only after a party tenders such an issue together with a fair summary of the evidence bearing on the challenged finding, particularly including evidence that arguably *supports* it." (*Id.* at pp. 409–410.) Failure to do so and to support such an argument with the necessary citations to the record results in waiver. (*Nwosu*, *supra*, 122 Cal.App.4th at p. 1246; *Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408 (*Rayii*).)

"An appellant's duty attaches at the outset. It would be unfair to permit an appellant to wait to argue his substantive points until after the respondent exhausts its only opportunity to address an issue on appeal." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852, fn. 10 (*Benach*).)

## 2. Penal Code section 496 cause of action

Cottonsmith and Mense argue that, as a matter of law, they did not violate Penal Code section 496. They argue that Penal Code section 496 is inapplicable because "one cannot be guilty of violating §496 for receiving or withholding property from another, in the absence of evidence demonstrating that the property was actually stolen, and the defendant knew it had been stolen." Although defendants' explanation is wrong in that section Penal Code section 496 encompasses a broader range of conduct than receiving or withholding stolen property, we agree the statute is inapplicable under the circumstances of the present case.

Kayne's claim under Penal Code section 496 was based upon *Bell v. Feibush* (2013) 212 Cal.App.4th 1041 (*Bell*).) *Bell* affirmed a default judgment that ensued after terminating sanctions for discovery violations. (212 Cal.App.4th at p. 1043.) "The evidence presented at the default prove-up hearing showed the following. Feibush induced Bell to loan him $202,500 based on the false pretense he owned the trademark 'Toughlove' and he needed the money to settle a lawsuit over his interests in what he called the 'toughlove' industry. That industry, Feibush explained, 'involved the

7

rehabilitation of troubled individuals through the implementation of strict counseling and other forms of treatment generally referred to as "toughlove."'  Feibush told Bell that his business plan was to launch a national 'revamped' version of Toughlove that would earn millions of dollars.  [¶]  Feibush's representations were false, and the so-called toughlove business was a scam.  When Bell asked for her money back, Feibush gave her a 'litany of excuses' and never repaid her." (*Id.* at pp. 1043–1044.)  Thus, *Bell* involved a transaction that was completely fraudulent from the outset, one in which the defendant never intended to repay the loan to plaintiff, but instead told her a false story to obtain her money, which he did not intend to repay.

 *Bell* examined both the language of the statute and the legislative history of subdivision (c), which was added in 1972.  *Bell* noted that Senate Bill No. 1068 (1972 Reg. Sess.), which ultimately created subdivision (c), "was introduced at the request of the California Trucking Association, with the goal of eliminating markets for stolen property, in order to substantially reduce the incentive to hijack cargo from common carriers." (*Bell*, *supra*, 212 Cal.App.4th at p. 1047.)  When introduced, the bill provided for a civil action by any public carrier injured by the knowing purchase, receipt, concealment, or withholding of stolen property, but it was subsequently amended to expand the class of potential plaintiffs to include any person injured by a violation of section 496. (*Ibid.*)  *Bell* concluded the legislative history showed that "the Legislature believed the deterrent effect of criminal sanctions was not enough to reduce thefts.  The means to reduce thefts, the Legislature concluded, was to dry up the market for stolen goods by permitting treble damage recovery by 'any person' injured by the knowing purchase, receipt, concealment, or withholding of property stolen or obtained by theft.  Requiring a criminal conviction under section 496(a) or section 496(c) before an injured person could recover treble damages would not advance the stated goal because civil recovery would be limited to those instances in which law enforcement authority decided to initiate and complete prosecutions." (*Bell*, at p. 1047.)

8

*Bell* also addressed the concern that allowing the plaintiff in that case to recover treble damages under Penal Code section 496, subdivision (c) "'opens the door to any collecting creditor to claim that a breach of contract action constitutes a fraud, and in turn constitutes a theft'" for purposes of Penal Code section 496, subdivision (a). (212 Cal.App.4th at p. 1047.) The court concluded, "it is the task of the Legislature to address those policy concerns. It is not this court's role to replace the word 'violation' with the word 'conviction' in the statute." (212 Cal.App.4th at p. 1049.)

Nonetheless, we conclude the Legislature could not possibly have intended Penal Code section 496 to apply in the circumstances of an ordinary contractual dispute arising in the course of an ongoing, legitimate business relationship, such as that of the parties in this case. Although the jury ultimately agreed with Kayne that Cottonsmith breached the Fabric Purchase Agreement by applying Kayne's $750,000 loan against FFI's debt, rather than repaying Kayne, Cottonsmith did not simply take and keep Kayne's money without intent to perform, as in *Bell*. Cottonsmith manufactured the shirts with the fabric purchased with Kayne's money and, when FFI was unable to purchase them, sold them to another buyer, as permitted by the terms of the Fabric Purchase Agreement. And although Cottonsmith breached the agreement by improperly crediting the amount of the $750,000 loan against FFI's debt, this was qualitatively different than simply failing or refusing to repay the loan, as in *Bell*, in that Kayne was the majority owner of FFI, and FFI necessarily benefited from the $750,000 credit. Cottonsmith's inappropriate handling of the $750,000 was not comparable to the fraud perpetrated upon Bell or to the knowing purchase, receipt, concealment, or withholding of stolen property the Legislature had in mind when it enacted Penal Code section 496, subdivision (c). This was, instead, a legitimate business transaction involving parties with a long business relationship in which Cottonsmith partially performed its obligations. Applying the remedies provided in Penal Code section 496, subdivision (c) in this context would not serve the legislative purpose of eliminating markets for stolen property.

9

Accordingly, we conclude that under the circumstances of this case, Penal Code section 496, subdivision (c) is inapplicable as a matter of law. We therefore reverse the jury's verdict on the Penal Code section 496, subdivision (c), cause of action. Because Kayne recovered treble damages and attorney fees solely under the authority of Penal Code section 496, subdivision (c), we necessarily reverse the award of treble damages and attorney fees.

**3.     Punitive damages award**

The award of punitive damages against Mense was based upon Kayne's breach of fiduciary duty cause of action, which was presented to the jury on alternate theories: (1) that Mense caused Cottonsmith to embezzle or wrongfully retain Kayne's $750,000 in violation of Penal Code section 496 or (2) that Mense failed to pay Kayne the amounts due under the Amended and Restated Operating Agreement. The special verdict does not reveal which theory the jury adopted.

Mense first challenges the sufficiency of evidence to establish that he acted with oppression, fraud, or malice. Mense has not cited any portion of the evidence presented at trial in either his argument on this claim or in his statement of facts. Moreover, he has not fairly summarized the evidence, either supporting the jury's verdict and finding or supporting his position, and shown how and why the evidence supporting the jury's verdict and finding is insufficient. This is fatal to his sufficiency of evidence claims. (*Nwosu*, *supra*, 122 Cal.App.4th at p. 1246; *Huong Que*, *supra*, 150 Cal.App.4th at p. 409; *Rayii*, *supra*, 218 Cal.App.4th at p. 1408.) Moreover, it is obvious from Kayne's responsive brief that he introduced a substantial amount of evidence supporting his cause of action. "[A]n attack on the evidence without a fair statement of the evidence is entitled to no consideration when it is apparent that a substantial amount of evidence was received on behalf of the respondent." (*Nwosu*, *supra*, 122 Cal.App.4th at p. 1246.)

Mense also seems to contend that Kayne was required to make an election of remedies. He argues, "any award of punitive damages for the fabric advance is precluded by the award of treble damages under Penal Code §496. That statute's provision for

10

trebling of damages is in itself punitive." This argument necessarily depends upon the possibility that the breach of fiduciary duty verdict, and thus the punitive damages, were based upon the embezzlement of the $750,000 fabric purchase advance, not the failure to pay amounts due under the Amended and Restated Operating Agreement. The special verdict form did not ask the jury upon which of the two theories it based its breach of fiduciary duty verdict, much less the finding of oppression, fraud, or malice underlying the punitive damages award. As noted, in the context of Kayne's breach of contract claims, the jury found defendants had breached both the Fabric Purchase Agreement and the Amended and Restated Operating Agreement.

Because (1) we presume the judgment is correct unless the appellant demonstrates otherwise, (2) we cannot determine the basis for the jury's breach of fiduciary duty verdict and punitive damages findings based thereon, and (3) it was a special, not a general verdict,[1] we necessarily presume the jury based its verdict and findings upon breach of the Amended and Restated Operating Agreement. Any other approach would be inconsistent with fundamental rules of appellate review. As stated in a sufficiency of evidence context, "'The court on appeal does not have to speculate on what particular ground the jury may have found in favor of the prevailing party.'" (*Everett v. Everett* (1984) 150 Cal.App.3d 1053, 1063–1064.) The issue Mense presents to us could have been resolved through a more detailed special verdict form. "'We should not permit the tactical choices of trial counsel to force abstract issues upon us. Rather, we should utilize opportunities to force counsel into requesting special verdicts.'" (*McCloud v. Roy Riegels Chemicals* (1971) 20 Cal.App.3d 928, 937.)

---

[1] Where a *general verdict* may have been based upon either a legally invalid theory or a legally valid theory, reversal is appropriate because the jury unwittingly may have relied upon the invalid theory. (*Carpiaux v. Peralta Community College Dist.* (1989) 215 Cal.App.3d 1220, 1224–1225; *Lundy v. Ford Motor Co.* (2001) 87 Cal.App.4th 472, 480.) Here, however, a special verdict was utilized. Moreover, Mense has not argued such a basis for reversal.

Accordingly, we presume the award of punitive damages was based upon breach of fiduciary duties owed Kayne under the Amended and Restated Operating Agreement, not the invalid theory of a violation of Penal Code section 496, and therefore conclude that Mense has not established any error regarding punitive damages.

**4.      Summary adjudication on alter ego theory**

Cottonsmith and Mense contend the trial court erred by granting Kayne's motion for summary adjudication with respect to the breach of contract cause of action in their cross-complaint based upon alter ego. The trial court concluded that Kayne had established there was no material fact as to the inapplicability of the elements of alter ego, i.e., unity of interest and an inequitable result. With respect to the latter, the court noted that the only possible inequitable result would be that Cottonsmith and Mense could not recover on the contract alleged in that cause of action, but "[d]ifficulty in enforcing a debt does not satisfy this element of the alter ego test." The court cited *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 539 (*Sonora Diamond*), in support of this principle.

On appeal, Cottonsmith and Mense argue that *Sonora Diamond*, *supra*, 83 Cal.App.4th 523, is "completely inapposite" because it addressed the alter ego doctrine "for purposes of *in personam* jurisdiction." They then cite *Sonora Diamond*, without a pinpoint citation, to argue that the only requirement to apply the alter ego doctrine "is that 'there must be an inequitable result if the acts in question are treated as those of the corporation alone.'"[2] They then make a number of factual assertions about the interactions between Kayne and FFI and Kayne and Cottonsmith, without a single citation to the appellate record.

To the extent their contention is based at all upon the facts, we disregard it because Mense and Cottonsmith failed to cite the appellate record and thus have failed to demonstrate error. Their reply brief also fails to cite the record regarding the particular

---

[2] At oral argument, counsel for Cottonsmith and Mense acknowledged that both unity of interest and an inequitable result are required.

12

factual assertions upon which it relies, other than a citation to their own cross-complaint. Their reply brief later attempts to deflect Kayne's argument about their failure to cite the appellate record by setting forth a blanket citation to 528 pages, divided into six groups, of the location in Mense and Cottonsmith's appendix of "the summary judgment papers and the supporting evidence." This is insufficient, both because it comes too late to satisfy their obligation to demonstrate error, which attaches at the outset, i.e., the filing of the opening brief (*Benach*, *supra*, 149 Cal.App.4th at p. 852, fn. 10), and because it fails to pinpoint in the record the evidence supporting (and opposing) these "facts." Accordingly, we address only the legal contentions Cottonsmith and Mense have raised.

"Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations. [Citations.] A corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation. [Citation.] Under the alter ego doctrine, then, when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners. [Citations.] The alter ego doctrine prevents individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds." (*Sonora Diamond*, *supra*, 83 Cal.App.4th at p. 538.)

"In California, two conditions must be met before the alter ego doctrine will be invoked. First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone. [Citations.] 'Among the factors to be considered in applying the doctrine are commingling of funds and other

13

assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other.' [Citations.] Other factors which have been described in the case law include inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers. [Citations.] No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied. [Citation.] Alter ego is an extreme remedy, sparingly used. [Citation.]" (*Sonora Diamond*, *supra*, 83 Cal.App.4th at pp. 538–539.) "The alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form. Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard." (*Id*. at p. 539.)

Although jurisdiction was in issue in *Sonora Diamond*, the legal principles set forth therein regarding the alter ego doctrine are well-established law applicable in any context where one party claims that another party is the alter ego of a corporation and should thus be liable for the corporation's obligations. Accordingly, it is entirely appropriate for both this court and the trial court to rely upon *Sonora Diamond* as a succinct and eloquent statement of the pertinent legal principles.

As for the argument that the only requirement for applying the alter ego doctrine is that an inequitable result would occur if the corporate veil is not pierced, Cottonsmith and Mense are simply wrong. Both *Sonora Diamond*, which they cite for their incorrect assertion, and a long line of undisputed, consistent, and established authorities require both an inequitable result and the unity of interest and ownership described above. (See, e.g., *Automotriz etc. De California v. Resnick* (1957) 47 Cal.2d 792, 796; *Stark v. Coker* (1942) 20 Cal.2d 839, 846.)

14

**5.     Invocations of Fifth Amendment privilege by Rosenblatt**

Cottonsmith contends the jury's verdict against it on its counterclaim against Kayne on an alleged oral guaranty for credit extended to FFI must be reversed because Kayne was allowed to play excerpts of the videotaped deposition of FFI's former chief operating officer, Lee Rosenblatt, in which Rosenblatt invoked his privilege against incrimination. However, Cottonsmith has not cited the appellate record to provide this court with the deposition excerpts of which it complains and its objections to those segments. Nor has it provided us with the evidentiary support for and against its counterclaim so as to show there is a reasonable probability it would have prevailed on that counterclaim had the segments of Rosenblatt's deposition in controversy not been introduced. Accordingly, Cottonsmith has failed to demonstrate both error and prejudice.

Moreover, as Kayne points out, the jury was instructed not to consider Rosenblatt's invocation of his privilege against self-incrimination. We presume the jury followed that instruction. (*Plut v. Fireman's Fund Ins. Co.* (2000) 85 Cal.App.4th 98, 106.)

**6.     Attorney fees and expert witness fees**

Cottonsmith and Mense contend the trial court improperly awarded Kayne attorney fees and expert witness costs. They argue, inter alia, that if this court accepts their theory regarding the invalidity of the Penal Code section 496, subdivision (c) theory, Kayne was not entitled to prejudgment attorney fees. They further argue Kayne was not entitled to expert witness fees as costs under Code of Civil Procedure section 998 or attorney fees incurred in contesting the bankruptcy petitions filed by Cottonsmith and Mense. Kayne, in turn, contends the challenges to the fees and costs are outside the scope of this appeal because Cottonsmith and Mense filed the appeal before the costs and fees were added to the judgment and did not file a later, separate notice of appeal pertaining to the costs and fees.

The judgment was entered on January 27, 2014. With respect to costs and fees, the judgment stated: "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that

15

Plaintiff Fred Kayne shall recover from Raphael Mense and Cottonsmith, LLC the costs of suit incurred in this action in the sum of $ _____, as will be set forth in the Memorandum of Costs to be filed pursuant to California Code of Civil Procedure §§ 998, 1032, and 1033.5, and California Rules of Court Rule 3.1700.  Kayne shall further recover from Raphael Mense and Cottonsmith, LLC his reasonable attorneys' fees expended in the course of this action in the sum of $ _____, as set forth in Kayne's motion to be filed pursuant to Rules of Court Rule 3.1702."

Cottonsmith and Mense filed their notice of appeal on March 5, 2014.  It purported to appeal not just from the judgment, but also "all orders made subsequent thereto implementing said judgment, including orders with respect to costs."  Kayne thereafter filed his memorandum of costs, his motion for attorney fees pursuant to Penal Code section 496, and a later motion for attorney fees and costs pursuant to Code of Civil Procedure section 685.040.  Cottonsmith and Mense filed a motion to tax costs  and opposed Kayne's motions for attorney fees.

On May 12, 2014, while Kayne's first motion for attorney fees was pending, he filed an acknowledgement that Cottonsmith and Mense had satisfied the judgment in the amount of $3,922,914.07.  The acknowledgment noted that Kayne's applications for costs and attorney fees were pending, as was his cross-appeal, and stated, "[T]his acknowledgement does not extend to any further award or judgment that may be entered hereafter in his favor against Mense and/or Cottonsmith, whether for costs, attorney fees, or other relief, which, if not separately paid and satisfied, will be the subject of separate enforcement."

On August 29, 2014, the trial court granted both of Kayne's motions for attorney fees in full and denied the motion to tax costs.  On January 15, 2015, the court signed and filed an order adding to the judgment $1,150,173.36 in costs and Penal Code section 496 attorney fees plus $114,055.50 in fees pursuant to Code of Civil Procedure section 685.040.

16

### a. Appellate jurisdiction regarding postjudgment costs or fee award

"A postjudgment order which awards or denies costs or attorney's fees is separately appealable . . . [citations], and if no appeal is taken from such an order, the appellate court has no jurisdiction to review it. [Citation.]" (*Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46.) However, if a judgment awards costs and attorney fees and provides for the later determination of the amount, a separate appeal from the subsequent order fixing the amount of costs and fees is not mandatory because "the notice of appeal subsumes any later order setting the amounts of the award." (*Grant v. List & Lathrop* (1992) 2 Cal.App.4th 993, 998 (*Grant*).)

Courts have construed the *Grant* exception to apply only to fees and costs to which the judgment entitles the prevailing party "as a matter of right," with the subsequent order merely setting their amount, but not to a discretionary award. (*Fish v. Guevara* (1993) 12 Cal.App.4th 142, 147–148 (*Fish*) [appeal from judgment did not provide appellate court with jurisdiction to review challenge to award of expert witness fees pursuant to Code of Civil Procedure section 998 because such fees are a discretionary award, "not incidental to the judgment but [] instead a separately litigated issue"]; *Gouskos v. Aptos Village Garage, Inc.* (2001) 94 Cal.App.4th 754, 764–765 [appellate court had jurisdiction to review only attorney fees awarded as a matter of right under statute, not other fees awarded as a matter of discretion under different statute]; *Silver v. Pacific American Fish Co., Inc.* (2010) 190 Cal.App.4th 688, 691–694 [where judgment stated that cross-defendant "'shall recover . . . attorney fees and costs of suit,'" with amount left blank, but statement of decision provided cross-defendant "'may make an application for attorney's fees and costs,'" the judgment did not establish cross-defendant's entitlement to fees, which was instead litigated in postjudgment proceedings; thus, appeal from judgment did not vest appellate court with jurisdiction to review fee award].)

17

### b. Prejudgment attorney fees under Penal Code section 496

Kayne's entitlement to attorney fees was based upon the provisions of Penal Code section 496, subdivision (c). Given our reversal of the jury's verdict on Kayne's Penal Code section 496 cause of action, the award of prejudgment attorney fees must also be reversed.

### c. Entitlement to attorney fees incurred in contesting bankruptcy

The trial court also granted in full Kayne's motion requesting $114,055.50 pursuant to Code of Civil Procedure section 685.040 for fees incurred in obtaining the dismissal of the postjudgment bankruptcy petitions filed by Cottonsmith and Mense. Code of Civil Procedure section 685.040 provides: "The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment. Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title unless otherwise provided by law. Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5."

Code of Civil Procedure section 685.040 applies where a statute authorizes attorney fees (*Rosen v. LegacyQuest* (2014) 225 Cal.App.4th 375, 382) and permits recovery of fees incurred in protecting the enforceability of the judgment by successfully resisting bankruptcy proceedings (*Jaffe v. Pacelli* (2008) 165 Cal.App.4th 927, 938). Nonetheless, because we have concluded that Kayne's Penal Code section 496, subdivision (c) cause of action was not legally valid, no statute authorizes recovery of attorney fees in this case. Accordingly, Kayne was not entitled to an award of attorney fees under Code of Civil Procedure section 685.040. Thus, the entire award of attorney fees must be reversed.

### d. Entitlement to expert witness fees

With respect to a challenge to the trial court's award of Kayne's expert witness fees pursuant to Code of Civil Procedure section 998, a separate notice of appeal was

required because such fees are a discretionary award, "not incidental to the judgment but [] instead a separately litigated issue." (*Fish*, *supra*, 12 Cal.App.4th at pp. 147–148.) Accordingly, the notice of appeal filed by Cottonsmith and Mense did not vest this court with jurisdiction to review a challenge to these expert witness fees. Because Cottonsmith and Mense did not file a separate notice of appeal regarding the award of expert witness fees, we cannot and do not review it.

**7.      Kayne's cross-appeal:  Failure to include interest in amount tripled under Penal Code section 496**

In his cross-appeal Kayne contends the trial court erred by refusing to include prejudgment interest in the amount that was tripled pursuant to Penal Code section 496, subdivision (c).  Given our reversal of the jury's verdict on Kayne's Penal Code section 496 cause of action, the issue is moot.

## DISPOSITION

The judgment is reversed with respect to the Penal Code section 496 cause of action, the award of treble damages, and the award of attorney fees.  The cause is remanded for recalculation of the amount of judgment without the treble damages and attorney fees.  The judgment is otherwise affirmed.  Kayne is awarded his costs on Mense and Cottonsmith's appeal; Mense and Cottonsmith are awarded their costs on Kayne's cross-appeal.

NOT TO BE PUBLISHED.


LUI, J.

We concur:


ROTHSCHILD, P. J.


CHANEY, J.


19